No. 93-039

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CHARLES W. OWEN,

      Plaintiff and Respondent,

  -vs-

RICHARD M. OSTRUM,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          T. Thomas Singer; Moulton, Bellingham, Longo &
Mather, Billings, Montana

      For Respondent:

          Kenneth D. Tolliver, Jeffrey Hunnes; Wright,
Tolliver & Guthals, Billings, Montana

Submitted on Briefs:  May 20, 1993

Decided: June 29, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Richard M. Ostrum (Ostrum) appeals from judgment, decree of foreclosure, and deficiency judgment entered by the Thirteenth Judicial District Court, Stillwater County. Ostrum's former partner, Charles W. Owen (Owen) brought the action to collect a debt and foreclose a security interest in shares of stock pledged as security for the debt. We affirm.

In 1958, Ostrum purchased a cattle ranch near Fishtail, Montana, in Stillwater County. He operated this ranch with his wife as a family corporation until 1977, when Owen invested in it, receiving shares equal to 49 percent of the corporate stock. During the next ten years, the ranch expanded, purchasing land or leasing other land owned by Owen, and the corporation began breeding and selling purebred Angus cattle. Owen paid the costs of expansion through loans and capital investments, in exchange for which he received corporate stock. Ostrum lived on the ranch and managed it until June 1989.

In 1979, Owen and Ostrum formed a partnership called Gold Block Angus. By 1987, Owen owned a 94 percent interest in the partnership, and Ostrum, a six percent interest. In December 1987, Gold Block Angus had assets valued for tax purposes at $2,601,091 and total liabilities of $4,751,072, excluding accrued interest. The partnership owed approximately $3.7 million to Owen and entities owned by Owen. Owen and Ostrum decided to recapitalize Gold Block Angus by writing off approximately $2.4 million of the

partnership's debt to Owen and incorporating as Gold Block, Inc. Ostrum's six-percent share of the capitalized liability was $144,000. As he had no funds for this capital contribution, Owen loaned him $144,000.

In exchange for the $144,000 loan, Ostrum signed a promissory note and a security agreement. The security agreement stated that Ostrum and Owen had agreed to transfer their interests in Gold Block Angus, a partnership, to Gold Block, Inc., a Montana corporation, in exchange for shares in the corporation. "In connection with [that] agreement," the document says, Owen loaned Ostrum $144,000 and Ostrum granted Owen a security interest in 1,200 shares of Gold Block, Inc. The security agreement described the loan as "evidenced by that certain Promissory Note dated December 31, 1987, which is payable on demand and which bears interest at the rate of 9.5 percent per annum."

In June 1989, Owen announced that he intended to liquidate Gold Block, Inc., and that Ostrum's employment as manager was terminated to facilitate the liquidation. Ostrum left the ranch, but Owen completed only a partial liquidation and continued to operate the ranch.

A year later, on June 14, 1990, Owen sent Ostrum a demand letter, stating that if Ostrum did not pay the $144,000 debt or negotiate a repayment plan in fifteen days, action might be taken to realize on the security by public or private sale of Ostrum's 1,200 shares. Ostrum made no payment, and Owen filed a complaint on August 9, 1990, seeking judgment in the amount of $179,306 and

3

foreclosure of the security interest.

Ostrum moved to dismiss the complaint for failure to state a **claim** upon which relief can be granted, on the grounds that Owen had not alleged execution or delivery of the promissory note and had not attached a copy of it to his complaint. Judge Fillner denied this motion, having determined that Ostrum owed a debt pursuant to the security agreement, and that the promissory note therefore was irrelevant, but Ostrum continued to deny that he had signed a note. In his answer to the complaint, Ostrum asserted that Owen could not prove that a note was executed or that he was the holder of a note, and that Owen had given no consideration for the alleged debt.

Owen moved for partial summary judgment in August 1991, asking the court to determine that Ostrum owed a valid debt and that Owen had an enforceable security interest, and to determine the amount of the debt. Ostrum argued in response that summary judgment was improper because there were factual issues as to the existence of the promissory note and as to whether Owen was the holder of the note. He also contended that the only consideration he received for his loan was his stock in Gold Block, Inc., and that by tendering this stock he had satisfied the debt. If his 1,200 shares were not worth $144,000, Ostrum argued, then their actual value should be determined at trial.

Judge Speare, then presiding over the District Court in Stillwater County, granted partial summary judgment in favor of Owen. He determined that no genuine issue of material fact existed

4

as to whether Ostrum owed Owen $144,000 or as to whether Owen had a valid security interest in Ostrum's 1,200 shares of Gold Block, Inc. stock, and that Ostrum had received consideration for the loan in the form of reduction of the partnership's debt.

The court entered judgment and issued a decree of foreclosure, dated August 29, 1991, ordering that Owen recover $194,032.80; that his security interest in Ostrum's 1,200 shares of Gold Block, Inc. stock be foreclosed; that the shares be sold at public sale; and that Ostrum pay any deficiency remaining after the sale. In his order, Judge Speare stated that he assumed the promissory note never existed.

In September 1991, Owen moved for approval of the sale of collateral, proposing to sell it by first publishing a notice in the Stillwater County News and the Billings Gazette for ten days prior to the sale, and then holding a public auction on the front steps of the Stillwater County courthouse, probably on November 8, 1991. A financial disclosure statement would be furnished to prospective buyers. The District Court declined to rule on this motion, stating that it already had ordered a public sale of the collateral and that Owen could proceed.

Ostrum filed a memorandum and affidavit opposing the proposed sale on the grounds that it was not commercially reasonable. As there is no market for a minority interest in a closely held corporation, Ostrum argued, full value for his stock could not be obtained through a public sale.

Ostrum also pointed out that Owen's proposed financial

5

disclosure statement undervalued Gold Block, Inc.'s assets and did not include the proceeds of recent land and cattle sales. The statement showed a negative net worth for the corporation. According to Ostrum, it had a positive net worth when he was managing it, but under Owen's management the net worth declined by $1 million.

A public sale was held on December 18, 1991, according to plan, and Owen bought the 1,200 shares for $15,000. No other buyers appeared. Owen then moved for award of attorney's fees and determination of deficiency judgment. Ostrum, opposing the motion, again argued that the sale was not commercially reasonable and that Owen therefore was not entitled to a deficiency judgment.

After a hearing on February 3, 1992, at which counsel reviewed the history of the case for Judge Baugh, the proceedings were delayed to allow further briefing on the issue of commercial reasonableness. Counsel then reviewed corporate financial records at the offices of Gold Block, Inc., and its accountant. On February 13, 1992, they found among the Gold Block, Inc. files a photocopy of the original promissory note, signed by Ostrum on December 31, 1987. This discovery was reported to the court, prompting a motion from Ostrum, who pointed out that the original note was still missing and requested indemnification to protect him from additional claims on the same note. Ostrum also asked the court to reconsider summary judgment and to require Owen to "meet his burden of proof" regarding ownership of the original note.

The hearing that began on February 3 was completed on August

6

25, 1992. Judge Baugh issued findings of fact, conclusions of law, and an order on September 8, 1992. He concluded that he was not authorized to act as an appellate court with regard to Judge Speare's grant of summary judgment; that the discovery of the promissory note changed nothing, as the judgment was based on a debt owed, not on the lost note: and that the parties' conflicting testimony on the value of Gold Block, Inc. assets and liabilities, market trends, and possible corporate mismanagement had revealed nothing to support a determination that the bid price of $15,000 was unreasonable.

Concluding that the method, manner, time, place, and terms of the stock sale were commercially reasonable, Judge Baugh issued a deficiency judgment in the amount of $194,032.80, pursuant to the August 1991 decree of foreclosure, less $15,000--the proceeds of the sale--plus attorney's fees in the sum of $11,709.92, costs in the sum of $175.55, expenses of the sale of the collateral in the sum of $3,114.53, and interest from August 29, 1991 to September 8, 1992, in the sum of $18,841.74, for a total judgment of $212,874.54.

Two issues are raised on appeal:

1. Whether the District Court erred in granting summary judgment on a debt memorialized in a promissory note, in the absence of the original promissory note and without requiring the creditor to post security.

2. Whether the District Court erred in concluding that the sale of the collateral was commercially reasonable and that Owen therefore was entitled to a deficiency judgment.

I

Did the District Court err in granting summary judgment on a

7

debt memorialized in a promissory note, in the absence of the original promissory note and without requiring the creditor to post security?

All three of the judges who were responsible for this case in District Court concluded that Ostrum's debt to Owen was established by the security agreement and that the promissory note, if it existed at all, was irrelevant. Ostrum contends that on the contrary, the debt was created by the note. Before he signed the note, he argues, he might have had an obligation to make a capital contribution to Gold Block, Inc., but the amount due, the rate of interest, and the repayment terms were to be found only in the promissory note. He asks this Court to reverse the District Court's rulings on this point because the District Court relied on the terms of the note in determining the amount of the judgment.

The first ruling on this point was made in 1990 by Judge Fillner, who denied Ostrum's motion to dismiss Owen's complaint for failure to state a claim upon which relief can be granted. A motion to dismiss a complaint under Rule 12(b)(6), M.R.Civ.P., may be granted only if it appears beyond any doubt that the plaintiff can prove no set of facts that would entitle him to relief. Contway v. Camp (1989), 236 Mont. 169, 173, 768 P.2d 1377, 1380. Taking Owen's allegations to be true, which meant accepting the parties' security agreement as evidence of Ostrum's debt, Judge Fillner properly denied the motion.

Judge Speare ruled on this issue in 1991, in his order granting Owen's motion for summary judgment. He found that Ostrum

had signed a security agreement that acknowledged his debt to Owen and that Ostrum stated in his deposition that he owed Owen $144,000; therefore, Judge Speare concluded, "there is no genuine issue of material fact that Ostrum owes Owen $144,000."

Finally, Judge Baugh reiterated his predecessors' conclusion that Owen had sued on a debt, not on a promissory note, and refused to reconsider summary judgment when Ostrum asked the court to do so in 1992.

Part of Ostrum's rationale for asking the court to reconsider summary judgment was his alleged need for indemnification pursuant to § 30-3-804, MCA (1989). This need did not arise until February 1992, when the parties' lawyers found the photocopy of the signed note. Until then, Ostrum had maintained that no note existed.

Section 30-3-804, MCA (repealed in 1991) authorized but did not compel the court to require security indemnifying an obligor against loss by reason of further claims on a lost, destroyed, or stolen instrument. Owen testified that he had not indorsed the note. As the note was payable only to Owen, it could not be negotiated without a forged indorsement. We conclude that Judge Baugh did not abuse his discretion in refusing to order Owen to post security.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden of demonstrating the absence of a genuine issue of material fact lies with the moving party. Ravalli County Bank v. Gasvoda (1992), 253

9

Mont. 399, 401, 833 P.2d 1042, 1043. Once the moving party has met that burden, the party opposing summary judgment must establish that a genuine issue of material fact exists. Peschel v. Jones (1988), 232 Mont. 516, 521, 760 P.2d 51, 54. Any inference that can reasonably be drawn from the offered proof must be evaluated in favor of the party opposing summary judgment. First National Bank in Eureka v. Giles (1987), 225 Mont. 467, 733 P.2d 357.

Whether an issue of fact is material depends on the applicable statutes. Giles, 733 P.2d at 358. In Giles, we reversed the district court's summary judgment because the court had applied § 30-3-304, MCA, without resolving the threshold issue of whether the defendant in fact had authority to indorse her husband's Veterans' Administration disability checks. Here, the District Court applied § 30-3-804, MCA (1989), which refers to missing negotiable instruments; no threshold factual issue existed because both parties agreed that the original promissory note was missing.

Section 30-3-804, MCA (1989), provides that the owner of a missing instrument may recover upon proof of (1) ownership, (2) the facts that prevent production of the instrument, and (3) the terms of the instrument. Here, proof of ownership and of the terms of the note was supplied in the parties' security agreement, which was attached to Owen's complaint. Owen testified that the original note was lost, and provided a photocopy. We hold that Owen met his burden of proof as to the validity of Ostrum's debt, and that he was entitled to judgment as a matter of law.

Did the District Court err in concluding that the sale of the collateral was commercially reasonable and that Owen therefore was entitled to a deficiency judgment?

Ostrum argues that a public auction is not a commercially reasonable sale of a minority interest in a closely held corporation, because there is no market for a minority interest in a closely held corporation. He points out that Judge Baugh reached the same conclusion, during the February 1992 hearing, but nevertheless concluded that Owen had met his burden of establishing that the method, manner, time, place and terms of the stock sale were commercially reasonable.

Section 30-9-504(3)(a), MCA, sets forth the requirements for disposition of collateral after default:

> Disposition of the collateral may be by public or private proceedings . . . . Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.

Ostrum contends that a public auction is not an appropriate method of disposing of a minority interest in a closely held corporation, as the stock is unlikely to be valuable to anyone other than the majority shareholder. Judge Baugh said much the same thing in his order, but he concluded, nevertheless, that the 'sale was not commercially unreasonable.

Ostrum objected to the sale but did not suggest an alternative method, manner, time, or place. He complained that the corporation had been undervalued for purposes of the sale, but he did not

11

attempt to establish an alternative value, nor did he demonstrate to the court's satisfaction that the $15,000 price paid by Owen for Ostrum's shares was not "fair market value." On appeal, Ostrum argues that $15,000 was not a fair price for the shares and that the value of his stock in January 1988, allegedly $144,000, was the best measure of its value in November 1991.

We addressed sale price as a factor in assessing the commercially reasonable disposition of collateral in a 1983 case that bears some resemblance to this one. Dulan v. Montana National Bank of Roundup (1983), 203 Mont. 177, 661 P.2d 28. The appellant, Dulan, pledged the stock of his incorporated photography business as collateral for a loan from the bank. Before renewing the promissory note a year later, he sold the corporation to a third party and placed the stock in escrow. The renewal note was secured by assignment of the buyer's note to Dulan. When the buyer defaulted, the bank demanded payment of the balance due on Dulan's original loan. Dulan did not make the payment, and the bank sold the stock, after notice to Dulan, to the buyer for the balance due on Dulan's note. This was only $1,500, a fraction of the $8,500 still due under Dulan's contract with the buyer.

Dulan challenged the sale of the stock on the grounds that the price was not commercially reasonable. He claimed that the corporation's assets had been valued at $22,280 the year before the sale, though testimony also was offered to show that the value had declined after the buyer took over the business. The district court concluded, and we affirmed, that Dulan did not meet his

12

burden of establishing that the stock was worth more than $1,500.

Here, Ostrum offered numerous estimates of the value of Gold Block, Inc. assets, particularly its land and registered cattle, but he did not provide an estimate of fair market value of the stock or bid on it himself. The District Court decided that in view of the negative net worth shown on the financial disclosure statement and the fact that only six percent of the shares were being offered, $15,000 was a reasonable price.

We hold that the District Court did not abuse its discretion in accepting the bid price in the absence of evidence as to the fair market value of the shares. See Carpenters-Employers Retirement Trust Fund v. Galleria Partnership (1991), 250 Mont. 175, 819 P.2d 158 (district court did not abuse its discretion in disregarding an estimated value of the defendant's real property which was not an appraisal, but merely a "probable approach" based on data submitted by a certified appraiser).

This Court has limited or barred recovery of a deficiency judgment in cases where the secured party did not meet the notice requirement of § 30-9-504(3), MCA. See Ottersen v. Rubick (1990), 246 Mont. 93, 803 P.2d 1066, and the cases cited therein. Here, in contrast, the secured party--Owen--mailed notice of the time, place, and manner of sale to Ostrum ten days before the date of the sale, and in addition published notices in the Stillwater County News and the Billings Gazette. Notice of public sale was posted in four locations in Stillwater County seven days prior to sale.

We hold that the District Court did not err in concluding that

13

the sale of Ostrum's 1,200 shares of Gold Block, Inc. stock was commercially reasonable, and that Owen therefore was entitled to a deficiency judgment.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_William E. Hunt_

Justices

June 29, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

T. Thomas Singer
MOULTON, BELLINGHAM, **LONGO & MATHER,** P.C.
P.O. Box 2559
Billings, MT 59103

Kenneth D. Tolliver
Jeffery A. Hunnes
WRIGHT, **TOLLIVER &** GUTHALS
P.O. BOX 1977
Billings, MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy