*1275
 
 OPINION
 

 By the Court,
 

 Springer, J.:
 

 This case began as a simple collection matter on a promissory note, which was filed against William Morris by Bank of America Nevada (“Bank”), successor to Valley Bank of Nevada, which was successor to Security Bank of Nevada. Morris counterclaimed against the Bank, claiming fraud, conspiracy, securities fraud, RICO violations and breach of the implied covenant of good faith and fair dealing. Morris later voluntarily dismissed, without prejudice, the securities fraud and RICO claims.
 

 With regard to the summary judgment entered against Morris on the Bank’s note collection claim, Morris did not deny execution of the note or nonpayment; rather, he contended that he signed the note under duress and that he was entitled to a set-off based upon the allegations set forth in his counterclaim.
 

 “Summary judgment is only appropriate when, after a review of the record in a light most favorable to the non-moving party, there remain no genuine issues of material fact and it is determined that the moving party is entitled to judgment as a matter of law.” Caughlin Homeowners Ass’n v. Caughlin Club, 109 Nev. 264, 266, 849 P.2d 310, 311 (1993) (citation omitted). We have reviewed the record and pleadings of the parties and conclude that Morris’ opposition to the Bank’s summary judgment motion was so inadequately and unartfully presented by Morris’ counsel as to provide to the district court no articulable, genuine issues of material fact. We are, therefore, compelled to deny Morris’
 
 *1276
 
 appeal as to the Bank’s judgment on the promissory note and to affirm summary judgment against Morris.
 

 With regard to the various counterclaims filed by Morris, we conclude that the trial court acted correctly in dismissing Morris’ counterclaims for fraud and conspiracy.
 
 [1]
 
 In spite of all of the procedural derelictions which were committed by Morris’ counsel, Patrick Clary
 
 (see
 
 footnote 1
 
 supra),
 
 we, nevertheless, decide that Morris should be allowed to proceed in the trial court on his counterclaim against the Bank for breach of the implied covenant of good faith and fair dealing. We reverse the trial court’s order dismissing Morris’ bad faith claim and remand for a trial on this claim.
 

 Dismissal under NRCP 12(b) is only appropriate where the allegations in the counterclaim, “taken at ‘face value,’. . . [and] construed favorably in the [counterclaimant’s] behalf,” fail to state a cognizable claim for relief. Edgar v. Wagner, 101 Nev. 226, 227-28, 699 P.2d 110, 111-12 (1985) (citation omitted).
 
 *1277
 
 “The complaint cannot be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him [or her] to relief.”
 
 Id.
 
 at 228, 699 P.2d at 112 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
 

 Contrary to the Bank’s assertions on appeal, a close reading of Morris’ amended counterclaim reveals sufficient factual allegations, which if taken at “face value,” as is required on appeal from a dismissal under NRCP 12(b), state a prima facie case for breach of the implied covenant of good faith and fair dealing. Specifically, Morris alleges that he had a contract with the Bank and that pursuant to that contract, Morris paid to the Bank the sum of $20,000.00, in exchange for which the Bank agreed to provide Morris with an irrevocable $1,000,000.00 commercial letter of credit naming Lloyds Bank as beneficiary. The contract between the Bank and Morris expressly notes that Morris was obtaining the irrevocable letter of credit as one of the conditions of a $20,000,000.00 loan that Morris had obtained from Lloyds on behalf of the Landmark Hotel and Casino, of which Morris was the sole shareholder. Morris also avers that Lloyds was the “lead bank” in Morris’ efforts to obtain further financing for the Landmark. The contract states: “One of the conditions of the [Lloyds loan] is that [Morris] post a ‘clean’ letter of credit in the amount of $1,000,000.00.” The Bank and Morris executed the contract, and pursuant to the contract, the Bank issued an
 
 irrevocable
 
 $1,000,000.00 letter of credit in favor of Lloyds. By the terms of the letter of credit, the Bank promised to “honor any drafts drawn” upon the letter of credit by Lloyds. The Bank honored Lloyds’ first draft on the irrevocable letter of credit but refused to honor Lloyds’ second draft in a timely fashion. Morris avers that on three separate occasions, the Bank refused to honor drafts tendered by Lloyds upon the
 
 irrevocable
 
 letter of credit. These drafts were to be allocated to interest payments on the $20,000,000.00 loan from Lloyds to Morris. Morris further avers that the Bank’s failure to honor the irrevocable letter of credit and refusal to pay on the requested drafts in a timely fashion resulted in Lloyds losing faith in Morris and caused Morris to lose Lloyds’ assistance in obtaining additional financing for the Landmark.
 

 If we accept Morris’ averments as true, which we must, we get a picture which may support a bad faith action against the Bank. Morris claims that, after first honoring Lloyds’ demand on the letter of credit, it commenced a whole series of actions which culminated in Morris defaulting on his loan from Lloyds and failing in his attempt to obtain further financing for the Land
 
 *1278
 
 mark. According to Morris, the Bank delayed and denied payments that the Bank was clearly obliged to make, while it tried to coerce additional security out of Morris. One might even read the pleading to say that the Bank deliberately disrupted the loan. There is enough here to put the Bank on notice of a claim upon which relief can be granted.
 
 [2]
 

 Where one party to a contract “deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing.” Hilton Hotels v. Butch Lewis Productions, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991). Taking Morris’ allegations as true, we must consider the Bank to have been put on notice by the pleadings of Morris’ claim that the Bank unwarrantedly delayed payment on Lloyds’ demands on the letter of credit and engaged in improper coercive actions against Morris and that, in bad faith, it countervened the “spirit” of its contract with Morris by wrongfully refusing to honor Lloyds’ draft on the letter of credit and by forcing Morris to provide additional collateral under the threat of litigation.
 

 Morris’ pleadings identify the contract which is the basis for Morris’ implied covenant claim (“the agreement providing for the LOC”). Further, Morris’ pleadings identify the Bank’s conduct which he claims to constitute the breach of the covenant. Finally, Morris has averred that the Bank’s breach of the implied
 
 *1279
 
 covenant of good faith and fair dealing caused him damage (principally causing him to default on the Lloyds’ loan and to lose the prospect of obtaining any future financing through Lloyds). These allegations, when taken as true, present a claim for breach of the implied covenant of good faith and fair dealing against the Bank, because they tend to show that the Bank deliberately refused to live up to the spirit of its obligation to honor the irrevocable letter of credit in favor of Lloyds.
 

 Although we do not consider materials outside the pleadings in reaching our decision in this case (for we need not), nevertheless, it is interesting to note that materials outside the pleadings, but in the record on appeal, especially Morris’ affidavits and the letters written by Lloyds’ counsel to the Bank, show that the Bank understood all along the consequences of its refusal to honor its obligations to Morris.
 
 [3]
 
 The Bank was aware of a potentially huge loss to Morris in the event the Bank dishonored the letter of credit because it knew of the indispensability of the letter of credit to the success of Morris’ loan transaction with Lloyds. In spite of this knowledge, the import of Morris’ counterclaim pleading is that although the Bank had issued an
 
 irrevocable
 
 letter of credit, it arbitrarily, and for no justifiable cause, refused to honor the irrevocable letter of credit and its contractual obligation to Morris. The Bank may be able to show justification for its actions in refusing to honor the irrevocable letter of credit, but there are certainly issues of fact relating to such justification for a jury to decide in the court below. Although Morris’ pleadings are less than ideal, we conclude that a claim has been stated for which relief can be granted, based upon the Bank’s alleged breach of the implied covenant of good faith and fair dealing.
 
 [4]
 

 
 *1280
 
 Morris’ counsel admits to making many “mistakes” in this case.
 
 [5]
 
 It is largely because of the “mistakes” and procedural derelictions on the part of Mr. Clary that we have found it necessary to allow judgment to stand on the Bank’s collection claim — for some $150,000.00, plus an additional $50,000.00 in attorneys fees. Although he managed to make some conclusory statements in opposition to the Bank’s motion for summary judgment, Morris’ counsel simply did not adduce
 
 the facts
 
 necessary to withstand such a motion. With regard to Morris’ claim against the Bank for breach of the implied covenant of good faith, however, we are most reluctant to allow Morris’ claim to be lost because of his counsel’s derelictions. We have construed this one counterclaim with some liberality, but it seems rather clear to us that a claim for relief has been stated.
 

 Advocacy on this appeal has also been close to useless. The brief filed by Mr. Clary provides this court with only seven pages of argument, mostly meaningless, conclusory drivel; the opening brief contains less than one page of argument on the issue of dismissal of Morris’ counterclaim for breach of the implied covenant. It contains no case authority on this question and barely constitutes what could be fairly called an “argument” at all, presenting us only with the generalization that “the extensive allegations of misconduct by the Bank contained in the Amended Counterclaims are replete with breach after breach of Valley Bank’s obligations under the document which the Bank sought to enforce in its Complaint.” No reference is made as to what these “extensive allegations” might be or where they might be found or what they might allege. This kind of statement in a brief is of no use to the court. Because of the injustice inherent in the imminent denial to Morris of his day in court, we did take the
 
 *1281
 
 trouble to examine the pleading, searching for “allegations of misconduct by the Bank” which might support a bad faith claim. In doing this we were able, with no assistance from Morris’ counsel, to discern allegations which do state a claim for relief based on a breach of the implied covenant of good faith and fair dealing. We refuse to deny Morris his day in court just because he was so badly served by his lawyer.
 

 In conclusion, given the state of the record before the district court and the failure of Morris’ counsel to appear and argue in opposition to the Bank’s motion for summary judgment, we are required to rule that the district court properly granted summary judgment in favor of the Bank. We disagree, however, with the district court’s ruling that Morris’ allegations in this counterclaim, when taken as true, fail to state a claim against the Bank for breach of the covenant of good faith and fair dealing. We therefore reverse the judgment of the district court on that issue alone and remand this matter to the district court for further proceedings.
 

 Steffen and Shearing, JJ., concur.
 

 Young, J., with whom Rose, C. J., agrees, dissenting:
 

 Respectfully, I dissent from the majority’s conclusion that Morris should be permitted to proceed to trial on his counterclaim against the Bank for breach of the implied covenant of good faith and fair dealing. Unlike the majority, upon “a close reading” of Morris’ amended counterclaims, I am unable to conclude that Morris pleaded a cause of action sufficiently enough to allow this case to continue.
 

 Arguably, the record (which includes matters not in the pleadings) shows that Morris may have a valid claim against the Bank for breach of the implied covenant of good faith and fair dealing — and perhaps even a tort action. However, these matters were
 
 not
 
 pleaded; and in reviewing an appeal from a decision on a motion under NRCP 12(b)(5), we should consider only the pleadings as they are — not as they might have been or could be. The majority purports not to have considered materials outside the pleadings in reaching its decision. Nevertheless, for the edification of inquiring readers, the majority goes on to elaborate at some length (including an enlightening footnote) on materials in the record that show that the Bank “understood all along the consequences of its refusal to honor its obligations to Morris.” As American humorist Kin Hubbard once said, “When a fellow says it hain’t the money but the principle o’ the thing, its th’ money.”
 

 I am of the opinion that our decision must be guided
 
 by the
 
 
 *1282
 

 pleadings alone
 
 in this case, which, after all, are the subject of this issue on appeal. This court has held that on appeal from an order granting an NRCP 12(b)(5) motion to dismiss, the only issue is whether the complaint states a claim for relief. Breliant v. Preferred Equities, 109 Nev. 842, 845-46, 858 P.2d 1258, 1260 (1993). In this case, the lower court based its decision on the pleadings alone. Apparently Morris made no effort to change these pleadings when the allegations were presented for judicial scrutiny. On appeal, our court does not redraft pleadings, it does not bolster defective pleadings by viewing them through the spectacle of facts found elsewhere in the record. We consider pleadings as they have been drafted, not as they might have been drafted, and in reviewing the trial court’s judgment, we consider only
 
 errors of law. See
 
 Pemberton v. Farmers Ins. Exchange, 109 Nev. 789, 858 P.2d 380 (1993) (on reviewing motions to dismiss, court must accept all factual allegations as true). In reading the pleadings, I cannot conclude that the district court erred in ordering dismissal.
 

 The charging allegations do not disclose whether Morris is asserting a contractual or tort claim or merely a contract claim based upon the implied covenant. The pertinent counterclaim alleges only, in the most general terms, that the “counter defendant and additional defendants on the counterclaim breached the implied covenant of good faith and fair dealing.” Even combing through the factual allegations set out in the first part of the amended counterclaims, which are incorporated into the bad faith claim, I can find no facts to support Morris’ general averment that the Bank breached the implied covenant. Further, I can find nothing that would put the Bank on notice that it was being charged with betraying Morris by being unfaithful to the purpose of Morris’ contract with the Bank or that the Bank betrayed justified expectations which Morris relied upon in his dealings with the Bank.
 

 I am also troubled by the majority’s admitted construing of this claim with “some liberality.” The majority writes that it is “most reluctant to allow Morris’ claim to be lost because of his counsel’s derelictions.” It is not our job to salvage cases irretrievably damaged or lost by the actions or inaction of counsel. We cannot create one standard of review for parties with efficient counsel and another, more liberal, standard for parties with less than efficient counsel. Such inefficiency on the part of counsel should not be remedied by “liberal” construction of pleadings, but rather by actions between the parties and their counsel.
 

 While it is clear that Morris’ counsel has served his client in a far from stellar manner, I cannot agree with the majority’s conclusion. The end may be justified by the means only when the means are consistent with our law.
 

 
 *1283
 
 As Cardozo once wrote, “One of the most fundamental social interests is that the law shall be uniform and impartial. There must be nothing in its action that savors of prejudice or favor or even arbitrary whim or fitfulness. Therefore in the main there shall be adherence to precedent.” Benjamin N. Cardozo,
 
 The Nature of the Judicial Process
 
 112 (1921).
 

 [1]
 

 The district court dismissed Morris’ counterclaims for fraud, conspiracy and breach of the implied covenant of good faith and fair dealing. With regard to the fraud counterclaim, the Bank correctly argues that Morris failed to state a claim, principally because Morris’ counsel failed to aver any specific misrepresentation of fact.
 
 See
 
 Sanguinetti v. Strecker, 94 Nev. 200, 206, 577 P.2d 404, 408 (1978);
 
 see also
 
 Brown v. Kellar, 97 Nev. 582, 636 P.2d 874 (1981). The appellate brief prepared by Morris’ counsel is entirely conclusory on this point, saying only that “[a]n examination of the common-law fraud counterclaim shows that it was ‘stated with particularity,’ as required by Rule 9(b) of the Nevada Rules of Civil Procedure” and that “[t]he specifics required to plead fraud, namely averments as to the time, place, and the identity of the parties involved and the nature of the fraud — are all set forth in said counterclaim.” Inspection of the fraud counterclaim reveals that it contains only vague charges that “counterdefendant” had “fraudulently refused to honor Landmark’s requested draws” and references to unspecified “wrongful and fraudulent conduct of the counterdefendant.” No actual false representations of any kind by “counterdefendant” are identified in the fraud counterclaim; thus, it quite clearly fails to state a claim upon which relief can be granted.
 

 In addition, Morris’ conspiracy counterclaim fails to allege that the Bank conspired to do some identifiable unlawful act. “An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts.” Sutherland v. Gross, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989) (citation omitted). Morris’ counterclaim fails to identify any combination between two or more persons and fails even to identify the supposed parties to the conspiracy. The required “unlawful objective” is similarly not stated in the pleading; therefore, the conspiracy counterclaim also fails to state a claim upon which relief can be granted.
 

 [2]
 

 Although it is certainly arguable that Morris had a viable action against the Bank for breach of its contract with Morris to issue and maintain an “irrevocable” letter of credit, Morris’ counsel failed to plead such a breach, either as a defense to the Bank’s note collection suit or as a counterclaim. We do not believe that this failure precludes Morris from prosecuting a bad faith action for contract damages and perhaps tort damages. We said in Hilton Hotels v. Butch Lewis Productions, 107 Nev. 226, 808 P.2d 919 (1991), that “even though” there was no breach of contract, a plaintiff “may still be able to recover damages for breach of the implied covenant of good faith and fair dealing.”
 
 Id.
 
 at 232, 808 P.2d at 922. Whether a breach of the
 
 letter of
 
 the contract exists or not, the implied covenant of good faith is an obligation independent of the consensual contractual covenants. “The covenant of good faith and fair dealing is implied into every commercial contract . . . .” Ainsworth v. Combined Insurance Co. of America, 104 Nev. 587, 592 n.1, 763 P.2d 673, 676 n.1 (1988) (citation omitted). Under the implied covenant, each party must act in a manner that is faithful “to the purpose of the contract and the justified expectations of the other party.”
 
 Hilton,
 
 107 Nev. at 234, 808 P.2d at 923. Morris’ allegations that the Bank first refused and then postponed and delayed payment in such a way as to cause Morris to default on the Lloyds’ loan presents at least a colorable claim of a course of bad faith even though all of the drafts presented by Lloyds to the Bank were eventually paid by the Bank. Morris avers that these unwarranted delays damaged his credibility with Lloyds and eventually caused him to default on the $20 million Lloyds’ loan and lose the opportunity for obtaining further financing through Lloyds.
 

 [3]
 

 The two letters from Lloyds’ counsel, one to the Bank expressing Lloyds’ concern about the Bank’s failure to honor the second draft on the letter of credit, and the other letter to Morris in which Lloyds states that it “considers the Valley Bank dishonor wholly unwarranted in light of the terms of the Guarantor LOC [letter of credit],” show the prejudice which the Bank’s actions caused Morris. Furthermore, the Bank’s actions appear to have been willful, as evidenced by a letter written by the Bank’s counsel to Lloyds which concludes that it was
 
 “not in Valley's best interest,
 
 to honor the draft.”
 

 [4]
 

 We do not rule in this opinion on the availability to Morris of a tort remedy, the so-called “contort” discussed in K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987). In Hilton Hotels v. Butch Lewis Productions, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991), we stated that when a person “performs a contract in a manner that is unfaithful to the purpose of the contract,” damages may be awarded. Because the
 
 Hilton
 
 case involved a commercial contract without a “special element of reliance or fiduciary duty,” we explained that only contract damages would be recoverable.
 
 Id.
 
 at 232-33, 808 P.2d at 923. An action in tort for breach of the implied covenant “arises only when there are special relationships between the tort-victim and the tort-feasor.”
 
 K Mart,
 
 103 Nev. at 49, 732 P.2d at 1370. We do not reach the question of whether Morris and the Bank had the type of “special
 
 *1280
 
 relationship” we found in
 
 K Mart
 
 to be sufficient to establish the basis for a bad faith tort claim. A decision on the availability of a tort remedy must be made by the trial court after it has heard the evidence in this case.
 

 [5]
 

 As Morris’ counsel, Patrick Clary, told us during oral argument, this “case has unfortunately been replete with a number of mistakes, many of which are attributable to [Clary].” Morris’ counsel may be credited, at least, with disarming candor when he admits to making mistakes in this case. Morris’ counsel failed to appear for the hearing on Morris’ motion to amend his counterclaims, and failed even to present the trial judge with a proposed amended counterclaim so as to preserve that issue for appeal. Counsel failed to appear for the hearing on the Bank’s summary judgment motion, which was subsequently granted. Clary included a mere one-and-one-quarter pages of argument in opposition to the Bank’s motion for summary judgment; and counsel failed to oppose meaningfully the Bank’s motion to dismiss Morris’ counterclaims. As noted above, Clary’s second application for an extension of time in which to file an opposition was dismissed when he failed to show up at the hearing.