**A.I. CREDIT CORP, a New Hampshire Corporation, Plaintiff/Counter-defendant**

v.

**William L. GOHRES; Mildred L. Gohres; Villa De Reve Ltd., a Nevada Corporation, Defendants/Counterclaimants**

No. CV–S–02–0149LRH (RJJ).

United States District Court,
D. Nevada.

Jan. 22, 2004.

Maximiliano Couvillier, Lionel, Sawyer & Collins, Las Vegas, NV, for Plaintiff.

David Mincin, Richard McKnight, Law Office of Richard McKnight, Las Vegas, NV, for Defendants.

## AMENDED ORDER

HICKS, District Judge.

Presently before the Court is Plaintiff A.I. Credit Corp's ("Plaintiff" or "AIC") Motion for Summary Judgment (Docket No. 77). Defendant filed an opposition (Docket No. 90) on June 23, 2003, to which Plaintiff subsequently replied. After a review of the record and relevant law, the Court grants Plaintiff's motion.

## BACKGROUND

Briefly, the relevant facts are as follows: Over the course of three years, Defendant William Gohres ("Gohres" or "Defendant") and his now deceased spouse, Mildred Gohres, borrowed approximately 4.5 million dollars from AIC. The loan was obtained in order to make premium payments on several life insurance policies. The life insurance policies were assigned to AIC as collateral for this debt. In December 2000, the Gohreses defaulted on the loan. Six months later, AIC notified Defendant that the loan was being accelerated and that AIC would execute on the

assigned Policies if the loan was not paid in full.

However, at Defendant's request, AIC instead agreed to forebear on Defendant's default, giving Defendant an additional two months to make full and complete payment on his debt before AIC commenced collection procedures. As a condition to making this forbearance agreement, AIC required additional collateral. It was agreed that Defendant's collection of Sky Jones artwork (the "Artwork")—which Defendant represented had a barter value of $23 million—would serve as the additional collateral during the forbearance period. Defendant was allowed to keep possession of the Artwork as "Bailee" during this time. The forbearance agreement provided that, if Defendant failed to pay, AIC was permitted to pursue a remedy by first selling Defendant's Artwork. (MSJ, App Tab 1 at Q, § 5 "Forbearance Agreement"). If the sale of the Artwork was not sufficient to cover Defendant's debt, then AIC would be entitled to execute on the policies. *Id.*

By the terms of the forbearance agreement, Defendant was required to pay his debt to AIC by September 1, 2001. Defendant failed to pay. On September 4, 2001, AIC made a written demand to Defendant to collect and ship the Artwork to AIC's offices in New York within 15 days. Because of the events of September 11, 2001, Defendant was granted an extension; however, Defendant failed to ship the Artwork to AIC and the Plaintiff ultimately was forced to hire a company to obtain the Artwork. When AIC then had the Artwork appraised, it discovered that the Artwork was valueless (despite the fact that the Artwork's "barter value" was estimated at 23 million). AIC then executed on the assigned policies by surrendering them for cash value. In so doing, Plaintiff was able to realize roughly one million ninety-one thousand dollars. Ultimately, Plaintiff

filed a complaint in the Federal District Court, seeking the nearly 3.5 million dollar balance on the debt, plus interest and reasonable attorney's fees.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment if the pleadings and supporting documents, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact ..." See *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir.1990); *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986). The purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Id.* A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

## DISCUSSION

With regard to a claim for collection on a promissory note, summary judgment may be granted in favor of the plaintiff if the debt is undisputed and there is no articulable, genuine issue of material fact. *Morris v. Bank of America Nevada*, 110 Nev. 1274, 1275–1276, 886 P.2d 454, 455 (1994). In the instant case, the Defendant does not dispute that he owes the debt. There is no issue of material fact as to any of the terms of Defendant's loan, and no dispute regarding Defendant's default under the terms of the loan or Defendant's

subsequent breach of the parties' forbearance agreement. Rather, Defendant asserts that AIC is not entitled to the money owed by Defendant because: (1) Plaintiff's claims are barred by illegality as Plaintiff was not licensed to grant loans in Nevada; and (2) Plaintiff is precluded from recovering against Defendant since it cannot produce the original Master Promissory Note. Additionally, Defendant claims that summary judgment should not be granted as factual issues exist as to whether AIC acted in good faith with regard to its obligations under the terms of the contract between the parties, and as to whether AIC failed to mitigate its damages.

## I. Summary Judgment with Regard to Plaintiff's Claim

### A. Plaintiff's claim is not barred due to illegality.

First, Defendant asserts that AIC's grant of a multi-million dollar loan to a Nevada resident was contrary to Nevada state law as AIC was not licensed to make such loans in Nevada.[1] In defense, AIC asserts that it is licensed in Nevada and that Defendant's evidence to the contrary lacks foundation and should not be considered.

 Certainly, a party opposing a motion for summary judgment must offer admissible evidence, and not simply offer conclusions of experts that lack any evidentiary foundation. See, e.g., Bertolucci

v. San Carlos Elementary School Dist., 721 F.Supp. 1150, 1157 (N.D.Cal.1989). However, the Court need not address either the merits of Defendant's affirmative defense or the admissibility of Defendant's evidence, because the Defendant has not directed the Court to any evidence that AIC was not properly licensed.[2] In contrast, Plaintiff has provided this court with a "Certificate of Compliance" from the State of Nevada, indicating that AIC is licensed to conduct the business of "premium finance" in the state. As the Defendant provides no evidence in support of its claim, summary judgment will not be denied on the basis of this affirmative defense.

### B. AIC's failure to produce the master promissory note does not bar its claim.

 Defendant next contends that Plaintiff may not obtain a judgement against him in the amount of the undisputed debt because Plaintiff is unable to produce a copy of the Master Promissory Note. As a general rule, the loss of a bill or note does not alter the rights of the owner, but rather renders secondary evidence necessary in order to establish the existence of the debt. See, e.g., Bingham v. Weber, 197 Or. 501, 513, 254 P.2d 219, 224 (1953); Owen v. Ostrum, 259 Mont. 249, 855 P.2d 1015 (1993).

---

1. Nevada Revised Statute 675.060(1) provides that "[n]o person may engage in the business of lending in this state without first having obtained a license from the commissioner." The statutes further provide that "[a] person engages in the business of lending in this state if he... makes loans to persons in this state." Nev.Rev.Stat. 675.060(2).

2. In making their argument, Defendant refers this Court to "Doumani depo at page 149; MSJ App. Tab 22, answer to interrogatory no.

4." However, page 149 of the Doumani deposition provided by Defendant does not mention whether AIC had a license to grant loans in Nevada. Moreover, though Plaintiff's appendix to their motion for summary judgment does contain interrogatories answered by Doumani, interrogatory number four is omitted. Therefore, the Defendant has not directed this Court's attention to any evidence which indicates that AIC was not properly licensed.

Nevada Revised Statute 104.3309 provides:

1. A person not in possession of an instrument is entitled to enforce the instrument if:

(a) He was in possession of the instrument and entitled to enforce it when loss of possession occurred;

(b) The loss of possession was not the result of a transfer by him or a lawful seizure; and

(c) He cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person that cannot be found or is not amenable to service of process.

With regard to the first requirement under the statute, the Court must consider whether Plaintiff can be said to have had possession of the instrument at the time it was lost. At first blush, it would appear that this requirement cannot be met as Plaintiff has already conceded that the note was in the possession of Defendant's lawyer when it was destroyed. However, the primary concern with regard to the enforcement of a missing note is that the defendant may be forced to pay the note twice if he is held liable to the first holder in court, and later presented the note by a second holder. *See, e.g., Powell v. First Nat. Bank of Columbus,* 145 Ga.App. 19, 243 S.E.2d 315, 316 (1978). For this reason, a court may be inclined to dismiss a claim brought by a plaintiff who lost a note, rather than hold the defendant liable when there is a risk that he will ultimately be prejudiced by plaintiff's lack of due diligence.

On the other hand, evidence that the note was not lost, but destroyed; and moreover that the note was in the possession of *Defendant's* agent at the time it was destroyed, alleviates the aforementioned concerns and reverses the risk of prejudice between the parties. Where requiring physical possession seems unnecessarily technical and unjust, courts have been inclined to find that a person can be a holder in due course without actual possession, if he has constructive possession. *See, e.g., Billingsley v. Kelly,* 261 Md. 116, 118, 274 A.2d 113, 115 (Md.1971). In *Billingsley,* the court found that, because the Plaintiff had had a right to pick up his note at any time from the person with actual possession, the mere fact that he had not done so before the note's destruction would not preclude his status as a holder in due course. *Id.* Similarly, AIC was entitled to the possession of the Master Promissory Note prior to its loss, and therefore can be said to have had constructive possession.

According to AIC, the note was destroyed before AIC was able to obtain it, and while in the possession of Defendant's agent, Mr. Doumani. Defendant argues that the deposition of Mr. Doumani, which is in-part relied upon by Plaintiff in explaining the loss of the Master Promissory Note, is not proof of the note's destruction. Specifically, Defendant asserts that the note may not have been in Mr. Doumani's possession; may not have been destroyed; and significantly, that it may not have even been executed (in spite of the millions of dollars loaned by Plaintiff and the previously undisputed status of the obligation). But the Defendant is unable to provide any evidence to bolster his doubts.

In contrast, Plaintiff has provided affidavits explaining that the Master Promissory Note was faxed to Defendant's agent in order to obtain Defendant's signature, and that the signed note was never returned to AIC. Plaintiff also has directed this Court's attention to Mr. Doumani's deposition, in which Defendant's agent explains that there was a fire in his office which

caused the office sprinklers to go off, destroying all the files. The deposition evidence is supported by Defendant's response to a *subpoena duces tecum* in which Plaintiff requested production of all documents concerning Defendant's financing to purchase the insurance policies. The Master Promissory Note was necessarily such a document. In response to the subpoena, Mr. Doumani represented that *all* requested documents had been destroyed as a result of the fire in his office. *See* Doumani October 23, 2002 letter, App. Tab 24 (emphasis added). Naturally, Mr. Doumani would have surrendered the note pursuant to the subpoena had it not been destroyed. Defendant cannot now create an issue of fact by pointing to the contradiction created by parts of Mr. Doumani's deposition and Mr. Doumani's response to a subpoena. *See, e.g., Foster v. Arcata Assoc., Inc.,* 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986) (holding that a party may not "create his own issue of fact by an affidavit contradicting his prior deposition testimony.") Further, a non-moving party may not rely on the court to simply disbelieve the moving party's evidence. Rather, the party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The Defendant has presented no evidence to counter Plaintiff's explanation for the loss of the Master Promissory Note. The Defendant does not even deny that Plaintiff's explanation may be accurate—he merely argues that it might not be. This is insufficient to convince the Court that the risk of another party discovering and enforcing the note is so considerable that the debt which is indisputably owed to Plaintiff should not itself be enforced.

The Court having found that Plaintiff had constructive possession of the note, the other requirements of the Nevada Revised Statute § 104.3309 are easily met: Plaintiff did not transfer the note, and Plaintiff cannot reasonably obtain possession of it. Finally, as required in the second subsection of the statute, Plaintiff has not only proven the terms of the note, but those terms are undisputed between the parties.[3] Therefore, the destruction of the Master Promissory Note will not serve to defeat Plaintiff's summary judgment motion.

### C. Factual issues as to whether AIC acted in good faith.

Defendant asserts that summary judgment must not be granted because there is a material issue of fact as to whether AIC acted in good faith with regard to its obligations under the terms of the agreement between the parties. In short, Defendant's argument is threefold: (1) that AIC accepted Defendant's Artwork as collateral based on its barter value, and therefore a triable issue of fact remains as to what AIC's duties were with regard to the Artwork; (2) that factual issues exist as to whether AIC lost some of the Artwork; and (3) that AIC breached the forbearance agreement in failing to sell the Artwork before surrendering the insurance policies. Defendant's arguments are analyzed below, as they relate not only to Plaintiff's claim, but also to the Defendant's cross-claims. In summary, this Court concludes

---

**3.** In similar circumstances, other courts have indicated that summary judgment could be granted for plaintiffs on the basis of the existence of an undisputed debt, rather than for the purpose of enforcing a promissory note. *See, e.g., Owen v. Ostrum,* 259 Mont. 249, 855 P.2d 1015, 1018 (1993).

that there is no evidence that AIC did not act reasonably and in good faith.

### D. Factual issues regarding whether AIC failed to mitigate its damages.

Defendant argues that AIC was bound to mitigate its damages and that it failed to do so when it surrendered the insurance policies for about $1,000,000 in cash. Defendant asserts that, rather than doing this, Plaintiff could have sold the policies on the secondary market. Next, Defendant contends that AIC could have better mitigated its damages had it continued to fund the policies.

 If a course of action chosen by a plaintiff in responding to the damage caused him by the defendant was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damage. *See, e.g., Federal Ins. Co. v. Sabine Towing & Transportation Co. Inc.,* 783 F.2d 347, 350 (2d Cir.1986); *Novelty Textile Mills, Inc. v. C.T. Eastern Inc.,* 743 F.Supp. 212, 219 (S.D.N.Y.1990); *Barnes v. Printron, Inc.,* 1998 WL 778378, *8 (S.D.N.Y.,1998); *O'Sullivan v. Joy Technologies, Inc.,* 446 Pa.Super. 140, 153, 666 A.2d 664, 670—671 (1995). In other words, the Defendant must present some evidence that Plaintiff acted unreasonably in order to avoid summary judgment. However, this Court concludes that it is reasonable *per se* for a party to enforce his remedies pursuant to the express terms of a contract; and moreover, that a duty to mitigate damages does not arise while a party enforces his rights by utilizing the remedies outlined in the agreement. *Peoplesoft U.S.A., Inc. v. Softeck, Inc.,* 227 F.Supp.2d 1116, 1121 (N.D.Cal.2002) (finding that the defense of mitigation damages was not available where the Plaintiff sought to enforce an express term of the contract for payment).

 Nonetheless, even if the Plaintiff did owe a duty to mitigate damages, the Defendant does not have sufficient evidence to fulfill its burden of proving that AIC's conduct was unreasonable. *See U.S. v. Harris,* 100 F.2d 268, 279, *reh'g denied* 103 F.2d 1020 (9th Cir.1938). In the way of evidence, Defendant provides bare assertions by its expert witness, Mr. Doumani, that AIC could have sold the insurance policies for a greater value than was obtained when AIC surrendered the policies. Defendant's memorandum of points and authorities states that AIC could have retained a minimum of $5,000,000 for the policies; yet Defendant does not point this Court to evidence within the record which corroborates this claim. Defendant also does not offer any evidence concerning whether the surrender of the policies was itself reasonable. Given this, the Court concludes that there is insufficient evidence from which a finder of fact could determine that AIC's surrender of the insurance policies—an action which AIC was contractually permitted to do—was unreasonable.

## II. Defendant's Counterclaims

Plaintiff requests this Court grant summary judgment on Defendant's three counterclaims:

### A. Defendant's counterclaim concerning life insurance policies.

Plaintiff moves for summary judgment with regard to Defendant's counterclaim that AIC did not execute upon the assigned insurance policies "in a commercially reasonable manner" under the Uniform Commercial Code when it surrendered the policies for cash value. Plaintiff asserts: (1) that the assignment of insurance policies themselves as security are not "secured transactions" covered by the Uni-

form Commercial Code,[4] and (2) that AIC had a contractual right to surrender the policies.

Even were AIC's surrender of the insurance policies an issue for the jury regarding mitigation of damages, which this Court has already deemed it is not, it would not be a basis upon which Defendant could counterclaim, as AIC has not acted illegally in enforcing it's contractual rights. Defendant's failure to respond to Plaintiff's motion for summary judgment on this counterclaim is viewed as a concession under the local rules.[5] For this reason, and for good cause showing, summary judgment is granted.

### B. Defendant's counterclaim for "lost artwork".

Defendant asserts a counterclaim against AIC for the alleged loss of several Sky Jones pieces from the Artwork that was appropriated by Plaintiff. However, Defendant has provided no admissible evidence in support of this claim.[6] Even were the deposition testimony provided by Defendant admissible, the testimony does not verify or even tend to evidence that AIC ever obtained 512 pieces of Sky Jones Artwork. Defendant attempts to prove that AIC received 512 pieces by establishing that soon after Defendant received the Artwork, he hired Hilburn & Lein, CPAs, to inventory and account for each piece. However, in the deposition transcript provided by Defendant to establish this proof,

Mr. Gary Lein testifies that he did not recall if Hilburn & Lein ever prepared a final inventory of the paintings. Mr. Lein also stated that he could not verify that all the artwork Defendant hired him to count was by Sky Jones, and not the work of some other artist. (Opp. MSJ., Lein Dep. at 87:18—89:3). In contrast, Plaintiff has provided affirmative evidence that the paintings, once appropriated, were stored in a secure location by Whitney & Co., and has enumerated the precautions taken to secure the Artwork. The contents of the wooden crates which held the paintings were disturbed only twice, once for appraisal and once for inventory. As there is no competent evidence that Plaintiff has lost any of the Sky Jones paintings which they are holding as security, summary judgment is granted as to this counterclaim.

### C. Defendant' counterclaim that AIC breached the forbearance agreement.

■ Defendant argues that, because Plaintiff accepted the Artwork as collateral based on its "barter value," a triable issue of fact exists as to whether AIC unreasonably elected *not* to satisfy Defendant's debt through sale of the Artwork, after it had been appraised as having a cash value of $0. Indeed, pursuant to the parties' forbearance agreement, Plaintiff was required to "enforce its rights and remedies"

---

4. Plaintiff assert that this is true with regard to the Uniform Commercial Code as it is adopted in Nevada and New York. *See* NRS 104.9109(4)(h); N.Y. UCC Art 9–104.

5. Local Rule 7–2(d) states "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion. The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."

6. The deposition testimony and deposition exhibits provided by Defendant in support of their counterclaim are not properly authenticated as they do not include a reporter's certification. *See Orr v. Bank of America*, 285 F.3d 764, 773–74 (9th Cir.2002) (holding that documents which are not authenticated cannot be considered evidence for motions in opposition to summary judgment).

with respect to collateral by first disposing of the Artwork. (MSJ, App Tab 1 at Q, § 5 "Forbearance Agreement"). However, the Defendant has provided no evidence that AIC agreed to execute on the Artwork through barter, nor has Defendant provided evidence of the Artwork's cash value. Nonetheless, even if this Court found that Plaintiff was required to enforce its remedies by first selling the Artwork, this requirement was extinguished by Defendant's failure to timely ship the Artwork to the seller. The Forbearance Agreement reads:

> ...the Lender will attempt to enforce its rights and remedies with respect to the collateral subject to such documents in the following order: (a) the Artwork, (b) the collateral subject to the Assignments and (c) any other collateral. The Lender shall have no obligations under this Section [if] ... either the Borrowers or the Company shall fail to fully comply with any written request for 15 days after such request is made upon any of the Borrowers or the Company including without limitation, any requests that the Artwork be assembled and shipped to one or more locations and any requests that the Artwork be appraised or inspected.

*Id.* The evidence establishes that not only did Defendant breach his duty to *timely* ship the Artwork, but Defendant altogether failed to do so and Plaintiff was forced to hire another company to take possession of the Artwork. Pursuant to the Forbearance Agreement, the Plaintiff's obligation to sell Defendant's Artwork before exercising its other remedies was extinguished by Defendant's failure to comply with the agreement. Consequently, summary judgment is granted as to Defendant's counterclaim.

## CONCLUSION

Accordingly, it is ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 77) is GRANTED.