**No. 91-268**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1992**

IN THE MATTER OF THE ESTATE OF ROSE M. JOCHEMS,

     Deceased.

DANIEL F. JOCHEMS,

     Petitioner and Appellant,

  -vs-

MARY ANN BUCSIS.

     Respondent and Respondent.



APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Chadwick H. Smith and Lewis K. Smith, Smith Law
Firm, Helena, Montana.

     For Respondent:

          Thomas K. Harlen and Richard L. Parish, Harlen,
Thompson & Parish, Helena, Montana.

Submitted on Briefs:  December 31, **1991**

Decided:  February 4, 1992

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Daniel F. Jochems appeals from a decision of the District Court for the First Judicial District, Lewis and Clark County, denying his petition for an adjudication that his mother, Rose M. Jochems, died intestate. We affirm.

The dispositive issues are:

1. Did the District Court err in concluding that Daniel Jochems failed to prove undue influence by his sister Mary Ann Bucsis over their mother Rose Jochems?

2. Did the District Court err in concluding that Rose Jochems possessed the requisite mental capacity to execute her will in December 1988 and to transfer certain certificates of deposit in February and July of 1989?

Daniel Jochems (Dan) and Mary Ann Bucsis (Mary Ann) are the adult children of Rose Jochems (Rose), who died on December 25, 1989, at the age of 86 years. Dan has challenged the validity of Rose's will dated December 8, 1988, and of her transfer of several certificates of deposit (CD's) to Mary Ann, on the grounds of lack of capacity and undue influence. In this action, he seeks to have the will declared invalid, to have Rose declared intestate, to prevent Mary Ann from disposing of or transferring any property she received from Rose during the last year of Rose's life, and to be appointed as personal representative of Rose's estate.

Rose resided in a senior citizens' apartment complex in Helena, Montana, for the last two years of her life, following the death of her husband. She suffered from emphysema and congestive heart failure. Mary Ann visited her biweekly and handled her financial affairs. Dan and his wife visited Rose at least weekly, escorting her to doctors' appointments and running errands for her.

During her last years, Rose made numerous transfers of money to Dan and his wife. These included $10,000 to allow Dan to pay off an obligation for back child support; $20,000 to pay off his home mortgage: $2,000 for clothing and travel expenses to Conrad, Montana, to allow Dan to visit his parents and attend his father's funeral: and $5,800 for a new garage and tools. The total amount Dan received from Rose between June and November 1987 was $37,800.

In late 1987, Rose signed a will devising $37,800 to Mary Ann "because I [Rose] have previously advanced an equal sum" to Dan. The residue of Rose's estate was devised in equal shares to Mary Ann and Dan. In June 1988, Rose gave Dan $1,300. In July 1988, she executed a new will in which she devised $39,100 to Mary Ann "because I have previously advanced an equal sum to my son, [Dan], prior to the execution of this will."

During the next three months, Rose bought Dan a new pickup truck and paid for some dental work he needed. This brought the total funds advanced to Dan since June 1987 to $51,889.

In October **1988** Mary Ann removed Rose's CD's from Rose's safety deposit box. According to Mary Ann, Rose had previously asked her to help protect her money because Dan frequently asked for money and she did not have the ability to refuse. However, when Rose learned that Mary Ann had taken the CD's, she was upset and asked Dan to find her an attorney. At Rose's request, that attorney prepared a revocation of Mary Ann's power of attorney, a power of attorney in favor of Dan and his wife, a letter demanding that Mary Ann return the CD's, and a new will.

On December 5, **1988,** Rose went to the attorney's office and signed a cancellation of the power of attorney in favor of Dan and his wife. She asked for the will the attorney had drafted for her, and took it with her.

Three days later, on December **8, 1988,** Rose signed a will prepared by Mary Ann and witnessed by acquaintances of Rose at her apartment complex. This will left Rose's entire estate to Mary Ann with the exception of one dollar to Dan. Attached to the will was an undated, signed "codicile" stating that the pickup truck given to Dan was to be considered an advance on his inheritance.

When this new will was executed, Rose's estate consisted of five CD's totalling $70,000. The CD's had been transferred to joint tenancy with Mary Ann during the summer or fall of **1988.** In January **1989,** four of the CD's were reissued for a six-month term

in Rose's name alone.   In July 1989, all five CD's were reissued in the names of both Rose and Mary Ann.

In October 1989, Mary Ann cashed one of the CD's, which both she and Rose had endorsed, in the amount of $10,000, as Rose's "funeral fund."   On October 13, 1989, Rose granted a new power of attorney to Mary Ann.   Based on this power of attorney, the four remaining CD's were reissued in Mary Ann's name for a one-year term.

The District Court concluded that the December *8*, 1988 will is valid and that the transfers of the CD's to joint tenancy with Mary Ann were consistent with Rose's intended disposition of her estate and were not unnatural.   It ruled that, as a result, the validity of Mary Ann's power of attorney and her subsequent transfer of the CD's to herself alone is immaterial.   The court named Mary Ann as personal representative of Rose's estate and awarded her costs and attorney fees.

I

Did the District Court err in concluding that Daniel Jochems failed to prove undue influence by his sister Mary Ann Bucsis over their mother Rose Jochems?

Section 28-2-407, MCA, provides that

Undue influence consists in:

(1) the use by one in whom a confidence is reposed by another . . . for the purpose of obtaining an unfair advantage over him;

>    **(2)** taking an unfair advantage of another's weakness of
>    mind: or
>
>    **(3)** taking a grossly oppressive and unfair advantage of
>    another's necessities or distress.

The elements necessary to prove undue influence are: **1)** confidential relationship of the person attempting to influence the testator: **2)** physical condition of the testator as it affects her ability to withstand influence: **3)** mental condition of the testator as it affects her ability to withstand influence: **4)** unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; 5) the demands and importunities as they may affect the particular donor, taking into consideration the time, the place, and all the surrounding circumstances. Matter of Estate of Luger **(1990), 244** Mont. **301, 303-04, 797 P.2d 229, 231,** citing Christensen v. Britton **(1989), 240** Mont. **393, 784 P.2d 908.**

Dan asserts that it is significant that the December **8, 1988** will was typed by Mary Ann and that the attached "codicile" concerning the pickup truck is inconsistent with the provision in the will leaving him only one dollar. He testified at trial, and now argues, that the gifts to him of **$10,000** and **$20,000** were belated compensation for the sale in the late 1960's of his parents' ranch, which he had been leasing and operating. He maintains that his virtual omission from Rose's will is unnatural.

Prior wills may be considered in evaluating the naturalness of

a disposition.  <u>Luger</u>, **244** Mont. at **304, 797** P.2d at **231.**  Rose's **1987** and **1988** wills establish a pattern of treating monies given to Dan as advancements on his inheritance.  The wills support the view that Rose provided for Dan through inter vivos transfers.

Mary Ann testified that Rose felt that Dan could not handle his personal finances so that she needed to take care of his needs while she was alive and that she considered the transfers of money to Dan during her lifetime to be his inheritance.  The total amount of the inter vivos transfers to Dan is approximately equal to the amount devised to Mary Ann.  The statement about the pickup truck in the undated, signed "codicile" attached to the December **8, 1988** will fits the pattern established in prior wills.  Mary Ann's role in typing the will does not lessen the significance of the established pattern demonstrated in those prior wills.

We hold that because Dan has failed to establish that the disposition in Rose's December **8, 1988** will is unnatural, the District Court did not err in concluding that he failed to prove undue influence.

## II

Did the District Court err in concluding that Rose Jochems possessed the requisite mental capacity to execute her will in December **1988** and to transfer certain certificates of deposit in February and July of **1989?**

**A** testator is competent to perform an act if she is possessed of the mental capacity to understand the nature of the act and to understand and recollect the nature and situation of her property and her relations to persons having claims on her bounty whose interests are affected by her will. Guardianship of Estate of Tennant (1986), 220 Mont. **78, 84, 714** P.2d 122, 126.

Dan relies upon testimony of Dr. Kremer that Rose used tank oxygen daily and experienced periods of lightheadedness and that he had to make written notes for her concerning medications and when or how she should take them. Dr. Kremer also testified that, in his opinion, her ability to make a logical judgment was "very poor" by December of 1988. Dr. Stephen Cade, Rose's treating physician for the last few weeks of her life, stated that, in his opinion, Rose was not competent to make sound judgments at any time from when he began treating her on October 12, 1989, to the date of her death, due to her condition and medications. Dan's wife testified that several times Rose became confused in stores and tried to try on clothes without retiring to the dressing rooms.

However, an employee at the bank where Rose had her CD's testified that Rose always seemed to have her mental faculties about her when she visited the bank, including the time she changed the CD's to joint ownership with Mary Ann. The bank employee testified that she explained the consequences of changes to Rose and confirmed that Rose understood the nature of the changes. Lola

8

Eschenbacher, who witnessed the December 8, 1988 will, testified that Rose was a very strong willed person who very much made her own decisions as late as November of 1989. Nick Jacques, the attorney Dan located for Rose, testified that on the day she came to retrieve the will he had drafted for her, which was three days before she signed the new will typed by Mary Ann, Rose's demeanor was brisk and businesslike. Dan himself testified that Rose was very strong-willed and making rational decisions as late as October 1988, when she bought him the pickup truck.

The District Court concluded that **"[a]lthough** she was ailing physically, and her mental faculties were not perfect, the evidence failed to establish that she was incapable of making rational decisions with respect to the disposition of her estate." After reviewing the record, we hold that the District Court did not err in reaching this conclusion.

Our holdings on the above two issues render immaterial, for purposes of this action, the remaining issues concerning whether CD's and money from certain bank accounts are assets of Rose's estate. Affirmed.

_J. A. Turnage_

Chief Justice

9

We concur:

John Conway Harrison

_(signature)_

William E. Hunt Sr.

R.C. McDonough
Justices

February **4,** 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Chadwick H. Smith
Lewis K. Smith
SMITH LAW FIRM
P.O. Box **604**
Helena. MT  **59624**

Thomas K. Harlen
HARLAN, THOMPSON & PARISH P.C.
800 Sixth Avenue
Helena.  MT  **59601**


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy