No. 91-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

AUDREY FLIKKEMA, WINONA VANDER
MOLEN, and WILLEMINA VAN EGMOND,

       Plaintiffs and Respondents,

  -vs-

CLARENCE J. KIMM,

       Defendant and Appellant.

**FILED**

OCT 14 1992

CLERK OF Ed Smith
STATE OF SUPREME COURT
OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Douglas Ritter, Nash, Guenther, Zimmer & Screnar,
Bozeman, Montana

      For Respondent:

          J. David Penwell, Attorney at Law, Bozeman, Montana

Submitted on Briefs:  July 2, 1992

Decided:  October 14, 1992

Filed:

                      Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiffs brought suit in the District Court of the Eighteenth Judicial District, Gallatin County, alleging, among other things, undue influence and actual fraud. The court, sitting without a jury, found for plaintiffs and entered judgment in the amount of $104,190.96. We affirm.

The following issues are presented for review by this Court:

1. Was respondents' action barred by the applicable statute of limitations?

2. Was the District Court's finding that there was undue influence clearly erroneous?

3. Did the District Court err in the award of punitive damages?

4. Did the District Court err in disallowing personal representative fees and attorney fees paid by the estate of the decedent?

This matter involves a dispute over the distribution of the estate of Alice Kimm. Alice Kimm, a widow, died on February 8, 1987, at the age of 85. The respondents in this case, Audrey Flikkema, Winona Vander Molen, and Willemina Van Egmond are all daughters of the decedent. The appellant, Clarence J. Kimm, is the son of the decedent. Decedent had another daughter who is not a party to this action.

The decedent's will, dated June 23, 1976, provided that her residuary estate should be divided equally between the parties to this action. Further, the will designated respondent Willemina

2

Van Egmond as personal representative. In September 1980, the decedent suffered the first in a series of debilitating strokes. From the time of her first stroke until her death, the decedent was considerably disabled. The District Court found that decedent had fluctuating periods when she could be considered generally mentally competent, but her physical abilities were always limited. During this time period it is uncontroverted that decedent and appellant shared a close and confidential relationship. Shortly after her first stroke, the decedent added a codicil to her will. The codicil changed the personal representative from Willemina to appellant. During this same time period, the District Court found that assets owned solely by the decedent were systematically transferred to the decedent and appellant as joint tenants. At trial, appellant alleged that at the time of these transfers he had no knowledge of the effect of joint tenancy, i.e., that upon the death of one joint tenant, property so owned would pass by operation of law to the surviving joint tenant.

Appellant initiated a probate proceeding following the decedent's death. Decedent's will was filed on March 24, 1987, and appellant was appointed and issued letters as personal representative on May 22, 1987. In July 1987, one of the respondents requested from appellant an itemized list of the residual monies left in the decedent's estate. Appellant then sent a note setting forth the various assets which remained and indicating that all three of the respondents would share equally with him in the distribution of these assets. Appellant alleges

3

that at some point after he had sent this note to respondents he learned that as the surviving joint tenant he was not obligated to distribute any of the property. On September 19, 1988, appellant filed the inventory and appraisement listing all the assets held jointly by himself and the decedent. Appellant then filed the final accounting, which respondents objected to.

On April 2, 1990, respondents filed suit alleging that the appellant had used undue influence and fraud to obtain the bulk of their mother's estate. Following a nonjury trial, the District Court found in favor of respondents. The court found that appellant had exercised undue influence in obtaining control over the decedent's assets. As a result of this unjust enrichment, the assets were subject to a constructive trust for the benefit of all four parties equally. Additionally, the court found appellant acted with actual malice and that the acts in question constituted actual fraud. Following a separate hearing on the matter, the court awarded punitive damages. The final judgment was for $104,190.96, which was to be divided between the three respondents. From the entry of this judgment appellant brought this appeal.

I

Was respondents' action barred by the applicable statute of limitations?

The District Court in this case decided both factual and legal questions. Prior to addressing appellant's first issue concerning the statute of limitations it is necessary to set out the appropriate standard of review in this case. On appeal, this Court

4

will not disturb the district court's findings of fact in a nonjury trial unless they are clearly erroneous. In the Matter of the Mental Health of E.P. (1990), 241 Mont. 316, 787 P.2d 322; Rule 52(a), M.R.Civ.P. Our standard of review of questions of law is simply whether the district court's interpretation of the law is correct. Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 770 P.2d 522. The basis for this standard of review is that no discretion is involved when a tribunal arrives at a conclusion of law. The tribunal either correctly or incorrectly applies the law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. This Court will also give due regard to the opportunity of the district court to judge the credibility of the witnesses. In the Matter of the Mental Health of R.J.W. (1987), 226 Mont. 419, 736 P.2d 110.

Appellant alleges the action brought by respondents should have been barred for failing to commence the action within the applicable statute of limitations, which both parties agree was two years, with the cause of action not to be deemed to have accrued until discovery by respondents of the facts constituting the claim. Section 27-2-203, MCA. Additionally, § 27-2-102, MCA, provides in part that:

> **When action commenced.** (1) For the purposes of statutes relating to the time within which an action must be commenced:
>
> (a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action;

5

(b) an action is commenced when the complaint is filed.

(2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

(3) The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:

(a) the facts constituting the claim are by their nature concealed or self-concealing; or

(b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause. [Emphasis added.]

Respondents filed their action on April 2, 1990. Appellant alleges that respondents either discovered the facts constituting their claim, or in the exercise of due diligence should have discovered the facts constituting their claim, well before April 1988. Therefore, appellant argues that respondents' filing in April 1990 is untimely pursuant to the two-year statute of limitations.

At trial, appellant elicited testimony from a friend of the respondents in an attempt to show that respondents, through the exercise of due diligence, should have discovered the facts constituting their claim. This witness testified that even prior to the death of their mother, respondents were concerned about the possibility that appellant was exercising undue influence over their mother's assets. Also introduced at trial was a letter from

6

an attorney advising respondents to "take such steps that might be necessary to protect your interests in your mother's property." This letter was dated May 15, 1987, several months after their mother's death. While this letter clearly did not put respondents on notice of any of the particular facts which constitute their present claim, it might be considered sufficient to require further inquiry on their part.

Respondents testified that prior to receiving the letter from the attorney on May 15, 1987, appellant had refused to communicate any information to them regarding their mother's estate. In July 1987, approximately two months after receiving the letter, one of the respondents requested from appellant an itemized list describing the residual monies left in her mother's estate. Appellant sent a note setting forth the various assets which remained and specifically indicated that these assets would be shared equally between appellant and the three respondents. At trial, all three respondents indicated that they relied upon this representation. When appellant was asked if there was any reason why respondents should not have relied on this representation, he replied, "probably not."

On September 19, 1988, appellant filed the inventory and appraisal listing all of the assets of the decedent and indicating that most of the assets were held in joint tenancy with him. Respondents allege that it was not until September 1988, when appellant filed the inventory and appraisal, that they become aware of the facts constituting their claim, and that by filing in

7

April 1990 they were well within the two-year statute of limitations. Appellant argues reliance must be reasonable and that respondents' reliance on his representation that they would all share equally in their mother's estate was not reasonable. Turley v. Turley (1982), 199 Mont. 265, 649 P.2d 434. Further, appellant contends that at the time he made the representation he did not understand that as a joint tenant he alone was entitled to all of the assets jointly held. The District Court specifically found appellant's testimony in this regard to not be credible.

Respondents point out that as personal representative of the estate appellant had a fiduciary duty to them which included the duty of full disclosure. Skierka v. Skierka Bros., Inc. (1981), 192 Mont. 505, 629 P.2d 214. Not only did appellant not comply with this duty of full disclosure, but he took affirmative steps to conceal from respondents the information necessary to bring their suit. The District Court found that appellant "continuously misrepresented the overall situation to [respondents], leading them to believe each would share equally with [appellant] in settling their mother's 'estate'."

There was conflicting evidence presented at trial as to when respondents either discovered or should have discovered the facts constituting their claim. The District Court Judge, after hearing all of this evidence and weighing the credibility of the witnesses, determined that the action had been timely filed. We hold that the District Court's finding that respondents' action was brought

8

within the applicable statute of limitations was not clearly erroneous.

II

Was the District Court's finding that there was undue influence clearly erroneous?

Appellant argues that respondents did not meet their burden of proof concerning the alleged undue influence and that the District Court's finding of undue influence is clearly erroneous. This Court, in Christensen v. Britton (1989), 240 Mont. 393, 784 P.2d 908, set out the criteria which must be satisfied in order to find undue influence. The five criteria are:

(1) Confidential relationship of the person attempting to influence the testator;

(2) The physical condition of the testator as it affects his ability to withstand influence;

(3) The mental condition of the testator as it affects his ability to withstand the influence;

(4) The unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence, and

(5) The demands and importunities as they may affect the particular donor taking into consideration the time, the place, and all the surrounding circumstances.

Christensen, 784 P.2d at 911. Each one of these criteria must be satisfied in order to prove an assertion of undue influence. We must, therefore, apply the evidence in this case to each of the criteria.

There appears to be agreement between the parties that appellant had a confidential relationship with the decedent. The

9

second and third criteria relate to the decedent's physical and mental condition and whether her condition affected her ability to withstand influence. The District Court, after hearing testimony concerning both the decedent's physical and mental condition, determined that decedent's mental condition fluctuated during the time period in question, while her physical condition was continuously limited. The decedent was a widow, elderly, and by all accounts in very poor physical health. Clearly, decedent's mental and physical condition made her susceptible to influence.

The fourth criteria is the unnaturalness of the disposition as it relates to showing either an unbalanced mind or a mind easily susceptible to undue influence. Decedent's will provided that appellant and respondents would share equally in her estate. The distribution provided for in the decedent's will was never changed and is an indication of her intent that the parties to this action would share equally in her estate.

Respondents argue that in this situation the transfer of most of the decedent's assets to appellant was unnatural. The fact that a parent might leave the majority of his or her assets to only one child, while excluding others, is not in and of itself unnatural. In fact, decedent's will did specifically exclude one of her daughters who is not a party to this action. However, considering the transfers in question in light of the fifth criteria clarifies why the transfers were unnatural. The fifth criteria requires an examination of the time, the place, and all the circumstances surrounding the transfers. In this case, there is a clear intent

10

that the parties to this action were to share equally in the estate. However, several years before the decedent's death most of her assets were transferred into joint tenancy with appellant. These transfers occurred at a time when appellant was clearly in a position to exercise influence over the decedent. Additionally, all of this occurred at a time, when due to her advanced age and illness, decedent was susceptible to such influence. The District Court's finding that appellant was unjustly enriched by exercising undue influence is not clearly erroneous. The District Court was correct in concluding that all of the assets coming under the control of appellant as a result of this undue influence were properly the subject of a constructive trust for the benefit of himself and respondents equally.

### III

Did the District Court err in the award of punitive damages?

Section 27-1-221, MCA, provides that "reasonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice." The District Court in this case found that appellant was guilty of both actual fraud and actual malice, and in a separate hearing on the matter awarded punitive damages in the amount of $30,000. Appellant argues that there was no basis for a finding of actual fraud, and therefore, the award of punitive damages was inappropriate. This matter need not be addressed by this Court, as the finding of actual malice, which is uncontested on appeal, is sufficient basis for the award of punitive damages.

11

Section 27-1-220, MCA, provides that punitive damages may be awarded for the sake of example and for the purpose of punishing a defendant. Section 27-1-221, MCA, sets forth the criteria to be followed by the district court in determining a punitive damage award and requires that the court clearly state the reasons for making the award. The District Court clearly followed the requisite criteria in determining the amount of the punitive damage award. In light of the statutory criteria and the circumstances of this case, we hold the District Court did not err in awarding $30,000 in punitive damages.

IV

Did the District Court err in disallowing personal representative fees and attorney fees paid by the estate of the decedent?

The District Court determined that appellant should be charged with repayment of personal representative fees and attorney fees previously paid by the estate. Apparently this decision was not based on a dispute over the calculation of the fees, but rather based on the court's conclusion that appellant had breached his trust. The review of fees paid or taken by a personal representative is left to the sound discretion of the District Court. The District Court's determination concerning fees will not be overturned absent a showing of an abuse of discretion. Estate of Stone (1989), 236 Mont. 1, 768 P.2d 334. The reasonableness of any challenged fee is determined in part by whether the services rendered were beneficial to the estate. Stone, 768 P.2d at 336.

12

In this case the services rendered were not beneficial to the estate. The District Court's determination concerning the fees was not an abuse of discretion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

October 14, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Douglas Ritter
Nash, Guenther, Zimmer & Screnar
P.O. Box 1330
Bozeman, MT 59771-1330

J. David Penwell
Attorney at Law
125 W. Mendenhall
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA
BY: _____
Deputy