NO.    94-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FILED

MAR 21 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

In the Matter of the Estate of
ALF A. LIEN,

     Deceased.


APPEAL FROM:    District Court of the Fifteenth Judicial District,
                In and for the County of Roosevelt,
                The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Robert L. Johnson, Lewistown, Montana; J. Douglas
          Alexander, Sidney, Montana

     For Respondent:

          Gene R. Jarussi, Jarussi. & Bishop, Billings,
          Montana; Phillip N. Carter, Sidney, Montana


Submitted on Briefs:  December 28, 1994

Decided:  March 21, 1995

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a summary judgment order in the District Court of the Fifteenth Judicial District, Roosevelt County, in favor of Mabel Gobbs, the Personal Representative of the Estate of Alf A. Lien. Appellant Dr. Clifton Berglee (Berglee) contested a 1989 will being probated by Mrs. Gobbs. Berglee claimed an earlier will should prevail and the 1989 will was invalid based on lack of testamentary capacity, undue influence, fraud and restraint. We affirm.

The sole question for review is whether the District Court erred in granting summary judgment to Mabel Gobbs.

Alf A. Lien (Lien) was a lifelong bachelor who farmed land near Brockton for many years. He died in 1991 at the age of 84, leaving an estate of approximately $750,000, which is the subject of this appeal.

Lien executed two wills prepared by different attorneys--one in 1987 and one in 1989. The 1987 will named appellant Berglee as personal representative of the estate and left all his real estate to Berglee. It also left the remainder of Lien's personal property in four equal shares to Berglee, Mrs. Gobbs, and two of Berglee's brothers. Lien had numerous brothers and sisters still living in Norway, where he had emigrated from in the 1920s, and he expressly stated in the will that he was specifically making no bequest or devise to them or any other persons not mentioned in the will.

The 1987 will was brought to Lien's attention by Mrs. Gobbs when Lien and Mr. and Mrs. Gobbs went to a bank so that Lien could

get his naturalization papers in order to obtain a passport for a trip to Norway. After Mrs. Gobbs questioned him about that will, Lien remarked many times that it was not what he wanted. After returning from the trip to Norway, Lien executed the second will dated April 11, 1989, leaving all his real and personal property in four equal shares to four first cousins--Mabel Gobbs, Clara Neer, Ingeborg Wallette and Luther Larson. The only restriction in this will was that certain named persons be given the right of first refusal prior to selling any of the real property for a specified period of time following Lien's death. The 1989 will nominated Mrs. Gobbs as personal representative and again expressly devised no property to Lien's brothers or sisters in Norway, with the exception of directing the personal representative to reimburse them for round-trip tickets from Oslo, Norway, to Regina, Canada if they desired to attend Lien's funeral. The second will also expressly revoked the 1987 will.

Berglee attacked the validity of the 1989 will on four separate grounds: (1) Lien was incompetent at the time he executed the will, **(2) Lien was a victim** of undue influence on the part of Mabel and Howard Gobbs, (3) the will was a product of fraudulent representations, and (4) Lien executed the will under restraint. The District Court granted Mrs. Gobbs' motion for summary judgment, finding no factual issues to submit to a jury.

> Did the District Court err in granting summary judgment to Mabel Gobbs on any of the four theories presented by Berglee?

## Standard of Review

Our standard of review of an order by a district court

3

granting summary judgment is the same as that used by the district court under Rule 56(c), M.R.Civ.P. Morton v. M-W-M, Inc. (1994), 263 Mont. 245, 249, 868 P.2d 576, 578. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

The moving party has the initial burden of demonstrating the absence of genuine issues of material fact. Once the movant has met that burden, the burden shifts to the party opposing summary judgment to establish that a genuine issue of material fact exists. Owen v. Ostrum (1993), 259 Mont. 249, 255-56, 855 P.2d 1015, 1019. The non-moving party may not rest upon the allegations or denials in the pleadings nor on speculative, fanciful or conclusory statements. Simmons v. Jenkins (1988), 230 Mont. 429, 432, 750 P.2d 1067, 1069. All inferences that reasonably may be drawn from the offered proof will be made in favor of the party opposing the motion for summary judgment. Owen, 855 P.2d at 1019.

Material issues of fact are identified by looking to the substantive law governing the proceeding. Owen, 855 P.2d at 1019. In this case, we review the record in light of the substantive law governing contests to wills. Section 72-3-310, MCA, provides that contestants of a will have the burden to establish the existence of one of the statutory grounds listed. Of the four theories argued by Berglee, § 72-3-310, MCA, provides that a will may be contested on the basis of three of them--lack of testamentary capacity, fraud and undue influence. There is no provision under Montana statutory

4

or case law to contest a will because of "restraint."

### A. LACK OF TESTAMENTARY CAPACITY

The test for determining testamentary capacity was set forth in In the Matter of the Estate of Bodin (1965), 144 Mont. 555, 560, 398 P.2d 616, 619, as follows:

> [A] testator is competent if he is possessed of the mental capacity to understand the nature of the act, to understand and recollect the nature and situation of his property and his relations to persons having claims on his bounty whose interests are affected by his will. . . . The "testator must have sufficient strength and clearness of mind and memory to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and the nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them." . (Citations omitted.)

Testamentary capacity is determined as of the date the will was executed--April 11, 1989 in this case--using the above test from Bodin's Estate, which is now well-established in Montana. See, e.g., In the Matter of the Estate of Jochems (1992), 252 Mont. 24, 29, 826 P.2d 534, 537.

Berglee argues that Lien lacked testamentary capacity at the time he executed the second will in April 1989 because (1) the 1991 death certificate indicates he had Alzheimer's disease, (2) Lien suffered from diabetes which affected his mind, (3) the 1989 will is unnatural as being contrary to what would have been expected of him, (4) he suffered from insane delusions and other physical ailments, (5) his speech was virtually unintelligible, and (6) he was not a usual client of the attorney who prepared the will.

As contestant to the 1989 will, Berglee bears the burden of establishing that Lien lacked testamentary capacity. Section 72-3-

5

310, MCA. To support her claim that Lien was competent when he executed the 1989 will, Mrs. Gobbs submitted numerous affidavits with attachments and the deposition testimony of numerous witnesses which provided evidence that Lien was competent to execute a will in April 1989. Mrs. Gobbs met her burden as the party moving for summary judgment. The burden shifted to Berglee as the non-moving party to present affirmative evidence of a material and substantial nature to raise a genuine issue of fact to defeat her motion. As discussed below, Berglee did not meet this burden.

Vic Koch (Koch), the attorney who prepared the 1989 will, testified extensively by deposition and affidavit. On the day Lien first met with Koch, Lien drove 35 miles from his home north of Brockton to Culbertson, then rode with Howard and Mabel Gobbs to Sidney, and upon their return to Culbertson, drove himself home again. The first time Lien came to Koch's office, they discussed the terms of the will; the second time a week later, Lien executed the will. Lien gave Koch an accurate description of real and personal property which he owned and expressed his wish to make specific provisions for the lessees of his land to have rights of first refusal in the event the real property they leased was sold within a specific time after his death. Lien provided correct names for both lessees, one of whom was Berglee. He was able to roughly plat out his land on a piece of paper to explain to Koch what he desired and how it was then being leased. He provided the full names of eight brothers and sisters in Norway who he wished to exclude from the will other than making a provision for their

6

travel expenses should they desire to attend his funeral. Lien also provided the names of four first cousins as devisees in equal part under the will. Lien expressed his desire to be buried in a specific cemetery. Koch testified that he concluded from his personal discussions with Lien that Lien knew what property he owned, what he wanted to do with his property and who he wanted to receive his property upon his death. Koch verified that Lien had read the document before signing and declared it to be his last will and testament.

Berglee contends that the 1991 death certificate indicates that Lien had Alzheimer's disease and demonstrates lack of testamentary capacity. There is no indication in the record, however, that Lien suffered from this disease in 1989 when he executed his last will. Lien died on July 17, 1991--more than two years after executing the 1989 will. Neither Dr. Mann nor Lien's prior treating physician made any indication in Lien's medical records that this was a concern at that time.

In 1989, he lived alone and cared for his own needs. Although he suffered from mild Parkinson's disease and was unable to legibly write his checks, he handled his own financial and personal affairs, with the exception of having Mrs. Gobbs prepare checks for his signature. Lien's reasons for seeking medical treatment in 1988 and 1989 were mild physical ailments having no bearing on mental functioning.

Dr. Mann testified by deposition that, in his opinion, Lien showed no signs of having any mental problems when he examined him

7

on May 12, 1989.  Dr. Mann did not examine Lien again until March 15, 1990, at which time he admitted him to the Culbertson hospital for treatment of leg ulcers.  Lien was hospitalized for four days and Dr. Mann spoke with him during the course of his hospital stay, noting no problems with mental functioning.  Dr. Mann also saw Lien on March 23rd, March 29th, May 4th, June 28th and August 20th of 1990.   He testified that Lien showed no symptoms of mental deterioration on any of these occasions.  It was not until January 11, 1991, that Dr. Mann first noted mental deterioration, stating that he was "failing rapidly."  Dr. Mann testified that from his own observations and from reviewing records of other physicians prior to the first time he examined Lien on May 12, 1989, he could state with reasonable medical certainty that he thought Lien was mentally competent at the time he executed his last will in 1989.

The only medical evidence provided by Berglee in support of his claim that Lien was incompetent in 1989 relates to his claim that Lien suffered from diabetes in 1989 and that the diabetes affected his mind.   In support of this contention, Berglee testified about his personal experience with the disease and his knowledge of the disease from working with animals that have suffered from diabetes.  Berglee is a veterinarian and did not establish that he is qualified to provide expert testimony that Lien's diabetes may have been out of control to the point where it affected his mental functioning.  Specifically, Berglee testified in his deposition that "Alf was exhibiting abnormal behavior consistent with a bad case of diabetes."  He then admitted that he

was not qualified to make this sort of statement. The record shows that Berglee and others were concerned about Lien taking his medication and that they made sure he remembered to take it daily. Although the death certificate indicates that diabetes was a contributing cause of his death, no inference can be made from that statement that it also affected his mental functioning. Nothing in the record supports an inference that Lien did not take his medication for diabetes or that it in any way affected his mental functioning.

Berglee next argues that the 1989 will is an unnatural disposition of property for Lien. He claims it is contrary to what would have been expected of him. Berglee presented deposition testimony from a few of his relatives to indicate that Lien regarded him and his family as the natural recipients of his bounty. Berglee was a neighbor of Lien, he checked in on him periodically while Lien still lived on his farm, and he and his family included Lien in family activities. Berglee was not a blood relative of Lien although he was distantly related by marriage. Instead of leaving a portion of his property to Berglee as the 1987 will had done, Lien changed this in the 1989 will to leave Berglee with only a right of first refusal for land leased by Berglee. Lien left his real and personal property to four of his first cousins. A will leaving the bulk of his property to first cousins rather than to a distant relative by marriage is not an unnatural disposition of property as claimed by Berglee even if it is not what others would have expected.

Berglee also contends that Lien suffered from insane delusions and other physical ailments which affected his mental functioning. The only evidence in support of this argument is Berglee's testimony that Lien had some "really wacky ideas"; testimony by Berglee's wife that Lien had some "strange beliefs"; and testimony by Berglee's mother that Lien had said something on his birthday in May of 1989 that did not make sense about some automobile or yard lights in the distance. This evidence does not support an inference in favor of Berglee that Lien suffered from insane delusions and there is nothing in the record to support his argument that Lien's physical ailments affected his mental functioning.

Berglee also argues that Lien's speech was virtually unintelligible and that he was not a usual client of the attorney who prepared the will. Lien spoke with a heavy Norwegian accent. Dr. Mann had some difficulty understanding him and relied on Mrs. Gobbs' interpretations to some extent. There is no indication from anyone else that they had difficulty understanding Lien's speech. Certainly, there is nothing to support an inference that Koch would not have understood how Lien wanted him to prepare his 1989 will. Koch testified in his deposition that he remembered that Lien had a Norwegian accent. He stated that he was used to talking to his father-in-law who also had a Norwegian accent so he had no difficulty understanding Lien.

Applying the test from Bodin's Estate to the facts and inferences to be made from them in favor of Berglee, we conclude

10

there are no inferences that reasonably may be drawn to support Berglee's contention that there are genuine issues of material fact on the issue of testamentary capacity. Although the testimony of Dr. Mann and Mrs. Gobbs indicates that Lien's mental capacity deteriorated in the months before his death on July 17, 1991, the earliest indication of impaired mental ability is January 1991. We conclude that Lien had the mental capacity when he executed the 1989 will to understand the nature of his actions, that he knew the nature and extent of his property and understood what he was doing in naming four first cousins as devisees.

### B. UNDUE INFLUENCE

Next, Berglee contends that Mabel and Howard Gobbs exerted undue influence over Lien and that this resulted in Lien's naming of members of Mrs. Gobbs' family as devisees rather than Berglee and members of his family. He argues that there are many inferences which can be drawn from Mrs. Gobbs' actions to support this claim: Mrs. Gobbs wrote out checks for Lien, she alienated him from his friends, she "confronted" Lien with the will when she discovered it in his safe deposit box in October of 1988, she had in her possession Lien's certificates of deposit and other financial documents and she received his mail at her address. Berglee contends that the 1989 will was a "radical departure from the 1987 document in favor of Mrs. Gobbs' interests" and, therefore, that Mrs. Gobbs has the burden of showing that the 1989 will was not the product of undue influence. Again, the contestant of a will has the burden of establishing undue influence, according

11

to § 72-3-310, MCA.  Berglee has not met this burden.

The test for undue influence in the making of a will is as follows:

> (1) Confidential relationship of the person attempting to influence the testator; (2) The physical condition of the testator as it affects his ability to withstand the influence; (3) The mental condition of the testator as it affects his ability to withstand influence; (4) The unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; (5) The demands and importunities as they may affect particular testator taking into consideration the time, the place, and all the surrounding circumstances.

In the Matter of the Estate of Maricich (1965), 145 Mont. 146, 161, 400 P.2d 873, 881. Each of the above elements must be satisfied in order to prove a claim of undue influence.  Flikkema v. Kimm (1992), 255 Mont. 34, 40, 839 P.2d 1293, 1297.

As with testamentary capacity, undue influence is never presumed and must be proven like any other fact.  Dybvik v. Dybvik (1982), 201 Mont. 389, 397, 654 P.2d 989, 993, citing Blackmer v. Blackmer (1974), 165 Mont. 69, 74, 525 P.2d 559, 562.  In Blackmer, 525 P.2d at 563-64, we held that the opportunity to exercise undue influence on the testator is not sufficient to prove undue influence and invalidate a will.  The opportunity to exercise undue influence is to be considered and correlated with the alleged acts of influence to determine if the acts amount to undue influence. Dybvik, 654 P.2d at 993.  We conclude that the facts relied on by Berglee, at most, show the opportunity to exercise undue influence.

Applying the test for undue influence, clearly the first criterion is met as there was a confidential relationship between Mrs. Gobbs and Lien.  Mrs. Gobbs assisted Lien in many ways.  She

12

helped him with payment of his bills by making out the checks for his signature. She made appointments for Lien and assisted him when he went to see his doctors by interpreting for him if needed. Lien stayed in the home of Mr. and Mrs. Gobbs for months at a time, particularly in winter, and Mrs. Gobbs provided him with a wooden box to store his personal documents in. She asked him if the 1987 will was what he wanted and when he told her it was not what he wanted, she made the appointment with Koch in Sidney so that he could execute a new will. Some time during 1990, Lien began receiving his bank statements at the address of Mr. and Mrs. Gobbs in Culbertson.

The second and third criteria, physical and mental condition of the testator as both may affect the testator's ability to withstand influence, have not been demonstrated by Berglee as outlined above in our discussion of Issue I. The record shows that Lien's physical and mental condition deteriorated rapidly in the last few months of his life; it does not demonstrate that his mental and physical condition was deteriorating in that manner in 1989 when he executed the second will. At the time he executed the 1989 will, Lien lived alone on his farm north of Brockton. He kept house, cooked, bought groceries, cleaned and washed his clothing. He drove his own car and had a valid driver's license.

There is no evidence in the record that Lien was physically or mentally susceptible to influence and Berglee points to no acts of influence apart from the circumstances surrounding the execution of the 1989 will. While Mrs. Gobbs admits to making the appointment

13

with Koch for Lien, nothing improper is evident from the record concerning the making of the 1989 will.  Mrs. Gobbs chose Koch upon the recommendation of a third party accountant; Koch was not her attorney and she did not know him prior to making the appointment.  Mr. and Mrs. Gobbs took Lien to Sidney so that Lien could meet with Koch.   Neither of them were present when Lien spoke with Koch and Koch testified they had no involvement other than calling for the appointment.

The circumstances surrounding the making of the 1989 will do not indicate that Lien was susceptible in any manner to undue influence.  Mabel and Howard Gobbs rendered assistance to Lien by driving him to Sidney.  They later provided assistance to him by having him stay in their home and by taking him shopping and doing other sorts of things to help him as he aged.  They accompanied him on a trip to Norway.  Toward the end of his life when Lien's physical and mental condition was rapidly failing, Mrs. Gobbs cared for Lien in her home until Dr. Mann advised that he be placed in the Culbertson nursing home in March of 1991.  None of these actions are unusual between relatives and Mabel Gobbs was one of Lien's closest blood relatives in this country.

Apparently Berglee views the removal of the three Berglee brothers as devisees as an unnatural disposition.  We have stated that the unnaturalness of a disposition, the fourth criterion, is to be considered as it relates to either an unbalanced mind or a mind easily susceptible to undue influence.  Even the fact that a parent might leave the majority of his or her assets to only one

14

child, while excluding others, is not in and of itself unnatural. Flikkema, 839 P.2d at 1298. The 1989 will is not a radical departure in favor of Mrs. Gobbs' interests. Mrs. Gobbs was named as a devisee in both wills. It is, however, a radical departure as to Berglee's interests; in the 1987 will, Berglee was to receive the real property and one-fourth of the personal property and two of his brothers were each to receive one-fourth of the personal property. However, the four devisees under the 1989 will were all first cousins of Lien and this is not an unnatural disposition.

We are unconvinced by Berglee's argument that the actions of Mr. and Mrs. Gobbs point to undue influence over Lien. We conclude that Berglee has failed to establish material facts in issue on his claim of undue influence.

## C. FRAUD

Berglee's final argument is that Mabel and Howard Gobbs made fraudulent representations to Lien so that he would turn against Berglee. Berglee contends that Mr. and Mrs. Gobbs were responsible for Lien's accusations in 1989 that Berglee had stolen money and grain from him and that this influenced Lien to remove him as a devisee in his will. He claims that Mrs. Gobbs knew that Berglee was not stealing money from Lien because she had his financial records in her possession and she acknowledged this in her affidavit.

Mrs. Gobbs' affidavit states that she did not have any of his financial records in her possession in 1989 and also that the five banks Lien did business with did not change the mailing address on

15

Lien's statements from Brockton to Culbertson until some time in 1990. Mrs. Gobbs also presented deposition testimony from other witnesses to support this.

Mrs. Gobbs denies she made any such statements to Lien about Berglee. She further contends that, even if the statements were made, Berglee has failed to set forth any evidence that Mrs. Gobbs knew the statements were false or that they were made with the intent to deceive Lien. We agree.

Berglee's allegations are speculative and conclusory. To support the allegations, Berglee's counsel submitted an unsworn statement which did not meet the requirements of Montana law. Moreover, the evidence must be in proper form and of a substantial nature, not fanciful, frivolous, gauzy or merely suspicious. Morales v. Tuomi (1985), 214 Mont. 419, 424, 693 P.2d 532, 535. An attorney's affidavit which only recites what he intends to prove at trial must be disregarded. Morales, 693 P.2d at 535. Berglee's allegations on the issue of fraud are in the nature of suspicious statements supported only by the allegations in his complaint repeated in his deposition. Again, Berglee has failed to establish affirmative evidence to defeat Mrs. Gobbs' motion for summary judgment.

We hold the District Court properly granted summary judgment to Mabel Gobbs.

Affirmed

_____
Justice

16

We Concur:

_____
Chief Justice

_____

_____
Justices

17