No. 97-607

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 249

IN THE MATTER OF THE

ESTATE OF EDNA MAE EGGEBRECHT,

Deceased.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gregory Paul Johnson, Billings, Montana (Co-Personal Representatives); Carla Bank, Brookfield, Wisconsin (pro se)

For Respondent:

Brent R. Cromley, Moulton, Bellingham, Longo & Mather, Billings, Montana (David Eggebrecht); Robert L. Stephens, Jr., Billings, Montana (minor heirs)

Submitted on Briefs: March 19, 1998

Decided: October 20, 1998

Filed:

No

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ **This is an appeal by the co-personal representatives of the estate of Edna Mae Eggebrecht from summary judgment entered by the Thirteenth Judicial District Court, Yellowstone County, declaring certain trust documents executed by the deceased, Edna Mae Eggebrecht, to be legally valid and effective. We affirm.**

ISSUE

¶ **Did the District Court err in determining there was no genuine issue of material fact regarding whether amendments which the decedent Edna Mae Eggebrecht executed to certain trust documents were a result of undue influence by her grandson, David Eggebrecht?**

-

BACKGROUND

¶ **Edna Mae Eggebrecht (hereinafter Edna or the decedent) died in Billings, Montana, on October 7, 1995. A will and codicil dated February 3, 1993, were admitted for formal probate and two of the decedent's adult children, Dorothy Suppes and Margery Hinman, were appointed co-personal representatives of the estate pursuant to the terms of the will. Additional documents were also submitted to the District Court, including a document identified as the Edna Mae Eggebrecht Family Trust dated February 3, 1993, the Amendment to the Edna Mae Eggebrecht Family Trust executed November 3, 1994, the Second Amendment to Trust**

Agreement dated July 10, 1995, the Irrevocable Trust Agreement dated July 10, 1995, the Irrevocable Trust Agreement dated September 8, 1995, and the Amended and Restated Trust Agreement of Edna Mae Eggebrecht dated September 12, 1995 (collectively, the trust documents).

¶ The will and codicil contain "pour over" provisions in which the assets of the decedent's estate are transferred into the Edna Mae Eggebrecht Family Trust and distributed according to the terms set forth in the trust documents. The co-personal representatives contested the validity of the four trust documents executed in 1995. In an order dated April 29, 1996, the District Court made an initial determination that the February 3, 1993 will and codicil constituted the last will and testament of the decedent but reserved jurisdiction to determine the validity and effect of the various trust documents at a later date.

¶ At the close of discovery but before trial, David Eggebrecht (hereinafter David), the grandson of the decedent and one of the primary beneficiaries of the 1995 amendments to the Family Trust, filed a motion for summary judgment that the 1995 documents executed by the decedent to amend the terms of the Family Trust were valid and enforceable. The co-personal representatives opposed the motion on the grounds that issues of material fact existed regarding whether David exercised undue influence over his grandmother in the creation and execution of the 1995 trust amendments. The District Court granted David's motion, holding that the four 1995 trust documents were valid and would control the disposition of the assets in the estate.

¶ The evidence before the District Court showed that Edna was an unmarried widow living in Billings, Montana. Although she lived alone, Edna was visited daily by her grandson, David, on whom she relied for assistance and company. In November 1995, Edna moved to Scottsdale, Arizona, to live with her daughter, Dorothy, for the winter. She returned to her home in Billings, Montana, the following May and resumed her daily relationship with David.

¶ Edna's broker and long time financial advisor testified by affidavit that sometime after her return from Arizona in 1995, Edna discussed with him her desire to effect certain changes in the terms of the trust documents. The broker recommended the services of a local attorney specializing in the area of estate planning.

¶ Sometime later David contacted this attorney to consult him regarding the handwritten changes Edna had been making to the trust documents and the possibility of having all of those changes memorialized into a single document. Copies of the marked-up trust documents were delivered to the attorney by David, and over the course of approximately three months, the four documents at issue were drafted, reviewed and executed. Although Edna never met in person with the attorney who was drafting the trust amendments, he testified in his deposition that they had spoken by telephone on several occasions to discuss the changes noted on the copies delivered by David.

## STANDARD OF REVIEW

¶ Our standard of review of the grant of summary judgment by the district court is the same as that used by the district court under Rule 56(c), M.R.Civ.P. *Estate of Lien* (1995), 270 Mont. 295, 298, 892 P.2d 530, 532. Summary judgment may be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. In a motion for summary judgment the moving party has the initial burden of showing an absence of material fact, upon which the burden shifts to the opponent to affirmatively demonstrate that an issue of material fact exists. *Owen v. Ostrum* (1993), 259 Mont. 249, 255-56, 855 P.2d 1015, 1019. Mere denial or speculations will not suffice, the nonmovant must show facts sufficient to raise a genuine issue. *Taylor v. Koslosky* (1991), 249 Mont. 215, 217, 814 P.2d 985, 986. However, all reasonable inferences that may be drawn from any offered proof will be made in favor of the party opposing summary judgment. *Lien*, 270 Mont. at 299, 892 P.2d at 532.

## DISCUSSION

¶ This Court has recognized that the imposition of undue influence as defined by § 28-2-407, MCA, can negate the free consent necessary for the valid creation and enforcement of an express trust. *Koslosky*, 249 Mont. at 218, 814 P.2d at 986; *Adams v. Allen* (1983), 209 Mont. 149, 153, 679 P.2d 1232, 1235.

Undue influence consists in: (1) the use by one in whom a confidence is reposed by another or who holds a real or apparent authority over him of such

confidence or authority for the purpose of obtaining an unfair advantage over him; (2) taking an unfair advantage over another's weakness of mind; or (3) taking a grossly oppressive and unfair advantage of another's necessities or distress.

Section 28-2-407, MCA.

¶ **The criteria for establishing undue influence are (1) a confidential relationship between the trustor and the person attempting to influence the trustor; (2) a physical or mental condition in the trustor that affects her ability to withstand the influence; (3) an unnatural disposition of property reflecting a mind which is unbalanced or susceptible to influence; and (4) demands or importunities made by the person seeking to influence the trustor that may affect the trustor, taking into consideration the time, place and all surrounding circumstances.** *Koslosky*, **249 Mont. at 218, 814 P.2d at 987;** *Allen*, **209 Mont. at 153-54, 679 P.2d at 1235. Each of these factors must be established in order to prove the existence of undue influence.** *Lien*, **270 Mont. at 304, 892 P.2d at 535.**

¶ **In its Memorandum and Order on Motion for Summary Judgment, the District Court concluded that there were no genuine issues of material fact regarding whether the decedent was under the undue influence of David at the time she executed the 1995 trust amendments. The co-personal representatives contend that material issues of fact exist with regard to all five of the requisite elements of undue influence. Our review of the record convinces us that the evidence presented to the District Court was not sufficient to give rise to a genuine issue of material fact regarding the imposition of undue influence upon the decedent and that David is therefore entitled to judgment as a matter of law.**

¶ **David concedes that a confidential relationship existed between himself and his grandmother, and this issue is not in dispute.**

¶ **With regard to whether the decedent suffered from a physical or mental condition affecting her ability to withstand undue influence, the co-personal representatives point to the paucity of evidence submitted by David regarding the decedent's physical and mental well-being at the time the 1995 trust documents were signed. In**

particular, they argue, because neither David nor any of the affiants who testified as to Edna's mental and physical health prior to her death were personally present at the very moment at which the documents were executed, there exists no evidence whatsoever which satisfies the movant's burden on this issue.

¶ We disagree. There is substantial evidence in the record that decedent's physical health was exceedingly good for a woman of her age. In addition, each of the affidavits of Eunice Montgomery, who ran a boarding house in which decedent stayed at night during the three months immediately preceding her death, Rhoda Schlehuber, an administrative officer at decedent's bank who handled the decedent's accounts, and Phillip Boggio, decedent's broker and financial advisor, as well as David's own testimony before the District Court at a prior hearing, state that throughout the months of July, August and September 1995, the decedent was in full command of all her faculties, was not easily subjected to the influence of others, and was possessed of very strong opinions which she communicated freely to others. The time frame encompassed by this testimony includes the entire period in which the decedent would have been effecting changes in and executing the amended trust documents. The quality of this evidence is sufficient to place the evidentiary burden upon the co-personal representatives to rebut these statements with evidence to the contrary in order to raise a genuine issue of material fact.

¶ The co-personal representatives have failed to carry this burden. Evidence that the decedent "undoubtedly suffered from some physical ailments from time to time," that she failed to pick up the eye-glasses prescribed for her by an eye doctor in Arizona, that she had been unhappy residing in Arizona over the previous winter, that she was 90 years old and had friends and family checking up on her, and that on one occasion she was not immediately clear-headed upon waking are not sufficient to raise a genuine issue of material fact on this point. Even if all reasonable inferences which may be drawn from this evidence are considered, the cumulative effect of this testimony is mere speculation as to the possibility of any mental or physical infirmity which could have affected Edna's ability to withstand attempted influence by another.

¶ Likewise, there was insufficient evidence submitted to the District Court to raise a genuine issue of material fact regarding the naturalness of the disposition of Edna's property. Although the changes to the trust documents increase the amount of property being left to David and his sons to the detriment of the decedent's daughters

and other descendants, this is not, by itself, sufficient to demonstrate an unnatural disposition. *See Lien*, 270 Mont. at 305, 892 P.2d at 536 ("Even the fact that a parent might leave the majority of his or her assets to only one child, while excluding others, is not in and of itself unnatural.")(citing Flikkema v. Kimm (1992), 255 Mont. 34, 41, 839 P.2d 1293, 1298). This is especially so in light of the decedent's comments to Eunice Montgomery, Rhoda Schlehuber and Phillip Boggio that her reasons for amending the trust were that she was generally unhappy with her daughters as a result of her visit to Arizona in the winter of 1994/1995 and that she felt she had already adequately provided for them during her lifetime.

¶ Although the amendments increase the amount of property left to David and his sons, they do not wholly eliminate all other recipients of property under the prior trust documents as the co-personal representatives seem to imply. That David would be the object of the larger part of Edna's largesse appears natural in light of the fact that it was upon David that Edna primarily relied to assist her with her routine chores, errands and appointments. As we discussed in *Lien*, none of these actions are unusual between relatives and are not, by themselves, cause for suspicion. 270 Mont. at 305, 892 P.2d at 536.

¶ The co-personal representatives argue that the amendments reflect a "radical change" from the terms of the earlier documents, demonstrating the unnaturalness of the disposition. This argument is not persuasive because the change in beneficiaries under the 1995 amendments is adequately explained by Edna's comments to third parties about her feelings toward the co-personal representatives and their receipt of lifetime gifts from Edna's estate. Edna's close personal relationship with her grandson, David, had existed for some time prior to her execution of the amendments, and if she felt that other possible recipients were adequately provided for, it would be natural to bestow a greater portion of her property on a relative with whom she was especially close. None of the evidence presented demonstrates a disposition so unnatural as to reflect a mind which was unbalanced or susceptible to influence.

¶ Likewise, there is no evidence in the record suggesting that David made demands or importunities upon Edna, seeking to influence her in the disposition of her property. The co-personal representatives repeatedly argue that it was David who chose the attorney who prepared the trust documents in 1995, that this attorney never met with Edna, and that therefore the changes in the documents were made at

David's direction according to his instructions. This argument is not supported by the evidence. Although David testified that he did initiate contact with the attorney who drafted the trust amendments, Edna's broker testified that he had been the one to recommend this particular attorney. That David couriered the documents between Edna and the attorney does not establish that the attorney was acting under David's direction. To the contrary, the attorney testified that in addition to following the handwritten notations on the trust documents themselves, he had also spoken several times with Edna by telephone to confirm the nature of the changes she wanted drafted. The attorney also testified that it is not uncommon in an estate planning practice to have trust documents sent to a client for signature without requiring the client to appear in person and have her signature witnessed. The evidence presented to the District Court on this issue was not sufficient to raise an issue of material fact precluding summary judgment.

¶ We affirm the judgment of the District Court that the four 1995 trust documents carry out the testamentary and estate planning intentions of the decedent and are therefore effective to control the disposition of her real and personal property.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

No

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY