No.   94-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CITY OF CUT BANK,

     Plaintiff, Appellant,

  -v-

GLACIER COUNTY, MONTANA,
DONALD KOEPKE, CLINTON R.
PILGERAM & FRED R. JOHNSON,
GLACIER COUNTY COMMISSIONERS,

    Defendants, Respondents.



FILED

MAR 27 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Glacier,
               The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

       Selden S. Frisbee, Cut Bank, Montana

     For Respondent:

       Larry D. Epstein, Glacier County Attorney, Cut Bank,
       Montana

Submitted on Briefs:   December 22, 1994

Decided:   March 27, 1995

Filed:

_____
     Clerk

Justice Fred J. Weber delivered the Opinion of the Court

This is an appeal from the grant of summary judgment to Glacier County by the Ninth Judicial District Court, Glacier county. We affirm.

The only issue on appeal is whether the District Court erred in granting summary judgment to Glacier County.

The City of Cut Bank (City) is a municipal corporation located within the political subdivision of Glacier County (County). The County Sheriff's office operates a dispatch service which dispatches for its own office as well as for the City. The City operates its own dispatch service for its police department, fire department and animal control between the hours of 8:00 am until 4:00 pm. Monday through Friday. The County dispatches for the City between the hours of 4:00 pm and 8:00 am on work days and 24 hours on weekends and holidays and on all occasions when the city dispatcher is unable to dispatch.

The Glacier County Sheriff's Office dispatch is the designated Public Safety Answering Point (PSAP) for the County pursuant to § 10-4-103(3), MCA. The County sent a letter to the City on July 22, 1988 asking the City to contribute to the financing of the dispatch service which until this time, the County had been funding exclusively. The City refused and the County threatened to cut off the dispatch service to the City as of October 1, 1988.

The City filed a Complaint seeking to have the County continue to make its dispatch service available to the Cut Bank Police Department at no charge. The City sought to have the County

enjoined from the cessation of this dispatch service and also requested a writ of mandate to force the County to continue providing the service free of charge to the City.

The County filed an answer and engaged in limited discovery. Subsequently the County moved for summary judgment.

On April 20, 1994, the court granted summary judgment to the County. The City appeals that order.

Did the District Court err when it granted summary judgment to the County?

The City argues that it had an agreement with the County that specifically provides that the County would fund the dispatch service for the City. Further, the City argues that statutes require that the County fund this service for the City. It is the City's contention that its taxpayers are already paying for this dispatch service and that contributing more money to the County for this service would involve double-taxation.

The County contends that there is no genuine issue of material fact here and that the only issue to be resolved is a matter of law. According to the County's interpretation of the law, it is not required to provide the City with free dispatch service. In fact, the County argues that it does not have to provide a dispatch service to a city at all but that statutes allow it a choice of three alternatives once it is designated as a PSAP--it can dispatch, relay or transfer a message. The County argues that issues involving taxation are irrelevant to the pertinent issue. Further, the County argues that it is under no contract to the City

of Cut Bank.

Summary judgment will be granted if there is no genuine issue of material fact and it is proven that the moving party is entitled to judgment as a matter of law. Rule 56(c) M.R.Civ.P. The party seeking summary judgment must prove that no material issues exist. Kittelson v. Archie Cochrane Motors, Inc. (1991), 248 Mont. 512, 813 P.2d 424. Once that is proven, the non-moving party must submit evidence to show that questions do exist as to material issues. Owen v. Ostrum (1993), 259 Mont. 249, 855 P.2d 1015.

The District Court granted summary judgment finding that any fact at issue was not material and counties are not required to provide dispatch service to cities. The District Court did not find any statutory requirement that the County was required to pay the City's dispatch service during off hours. The District Court found that all taxation arguments were not relevant.

The County has proven that no questions of material fact exist: Cut Bank is a city within Glacier County and is currently receiving free dispatch service from the County, the County has asked for financial help from the City, and the City has denied that help. There is no question that this is the situation. While the City asserts in its pleadings that material issues exist, it has provided no evidence to show that material issues are in any way in controversy. The City may not just assert that material issues exist; it must present depositions, affidavits, some evidence to support its assertions. Minnie v. City of Roundup

(1993), 257 Mont. 429, 849 P.2d 212.

The only question that exists under the facts of this case is a legal one. While the City is correct that the legislature adopted §§ 10-4-101 through 121, MCA in 1985, nothing within these lengthy statutes requires that counties pay for dispatch services to cities within their jurisdiction.

These statutes are contained in a chapter entitled State Emergency Telephone System and provide the requirements of such a system when set up by a public or private safety agency. Provisions enable agencies with common boundaries to make agreements which would provide emergency service. However, the statutes do not require an agency to provide free dispatch service to another entity that shares a common boundary.

The County asked the City in its interrogatories to submit a copy of the agreement that the City stated it had with the County concerning the County's dispatch service to the City. The City provided a document that it called an "agreement" and which it characterized as a binding contract. Even a cursory inspection shows that it is not a contract. A contract must include identifiable parties, parties' consent, lawful object, and consideration. Daniels v. Thomas (1990), 246 Mont. 125, 804 P.2d 359. Here, the only element satisfied is that the document involves a lawful object.

The document is clearly labeled "application" and is a proposed "final plan" to be sent to the State of Montana for approval of a county emergency telephone system. The record does

not show that State approval was ever obtained for the plan.  The City cannot rely on this document as it is clearly not a contract purporting to provide Cut Bank with free dispatch service.

We do not consider the question of taxation as it is not relevant to the question of whether a county has to provide free dispatch service to a city within its jurisdiction.

We conclude that the City of Cut Bank did not meet its burden of proving that material issues exist and the law involved does not require a county to provide a city within its jurisdiction with free dispatch service.  Therefore, we hold that the District Court did not err in granting Glacier County summary judgment.

Affirmed.

_____
                                        Justice

We Concur:

_____
            Chief Justice

_____

_____
            Justices

Justice Terry N. Trieweiler dissenting.

After reviewing the record, I find it difficult to either agree or disagree with the majority opinion. There is simply an inadequate basis in the record from which to draw any conclusion about the County's and the City's respective obligations to each other.

The District Court's conclusion that Glacier County had no obligation to provide dispatch services to the City of Cut Bank was based, in part, on a 1977 Attorney General Opinion to that effect. However, the City's claim that it is entitled to dispatch services without further charge is based on Title 10, Chapter 4, of the Montana Code Annotated, which provides for a state emergency telephone system. This chapter of the Code was not even enacted until 1985.

Title 10, Chapter 4, of the Montana Code Annotated, provides for the establishment of public safety answering points at various locations in the State to receive emergency calls based on a 9-1-1 service, and provide a response to those calls. Every city or county which provides emergency services may establish an emergency telephone system. However, once established the system must include 24 hour service accessible by dialing 9-1-1 anywhere within the system's jurisdiction. The system must also provide for either direct dispatch of safety services, or relay or transfer of 9-1-1 calls to the appropriate safety agency. See § 10-4-103(1) and (2), MCA.

The facility (in this case the Glacier County Sheriff's Office) in which the local unit of government establishes the emergency telephone system, is known as the "public safety answering point." Section 10-4-101(13), MCA. When emergency calls are made to a public safety answering point (the Glacier County Sheriff's Office), the person receiving those calls has a statutory duty to notify the appropriate "public safety agency" (in this case, the City of Cut Bank's fire department, police department, or animal protection unit) of the request for services. However, the Emergency Telephone System Act seems to provide that that notification can take one of several forms--either "direct dispatch," or transfer or relay of the call. Section 10-4-101(13), MCA. The transfer method involves transferring the caller to the appropriate provider of emergency services. Section 10-4-101(16), MCA. The relay method requires that the 9-1-1 dispatcher convey the necessary information to the appropriate provider of emergency services. Section 10-4-101(14), MCA. The direct dispatch method, on the other hand, would require the person answering the phone at the public safety answering point (the sheriff's office) to dispatch the appropriate emergency service units. Section 10-4-101(3), MCA.

I would conclude from the provisions of the Emergency Telehone System Act, that once designated as the public safety answering point for Glacier County, the County had an obligation pursuant to § 10-4-104(2), MCA, to at least notify the City of requests for emergency services within the City's jurisdiction. However, it is

8

*unclear to me from* the record **in this case** whether the county denies any obligation under § 10-4-104(2), MCA, without reimbursement from the City, or whether it merely denies an obligation to provide for direct dispatch of emergency services within the City's jurisdiction. There is no satisfactory discussion of that issue in either party's brief, in the majority opinion, or elsewhere in the record.

A second issue which causes me concern with the result arrived at by the majority is the effect of the provision in § 10-4-111, MCA, for the submission of a preliminary plan to the Department of Administration by an applicant for a 9-1-1 jurisdiction (in this case, the County). In response to the County's request that the City produce a copy of any written agreement which would require it to provide emergency telephone service to the City, the City produced a 27-page document entitled "Emergency Telephone **System** Plan Summary." Various pages of the document are referred to by the subheading "Agreement" and appear to be executed by representatives of the National Park *Service,* the County Ambulance Service, the County Commissioners, the County Sheriff's Department, the County Fire Department, the City of Cut Bank, and the City of Cut Bank Police Department. The purpose of the document, as set forth on page one, was as follows:

> This application is to serve as a summary of the Preliminary and/or Final Plan to establish an emergency 9-1-1 telephone system as required by 10-4-101 through 10-4-121, MCA. Submission of this application is intended to expedite the state review and approval process by the Department of Administration.

On page 25 of the plan summary, under the subheading "System Cost," Glacier County apparently made the following representation:

9-1-1 costs for Glacier County Exceeds [sic] state funding, therefore various county departments['] budgets will be used to offset differences.

The plan makes no mention of any supplemental funding by the City of Cut Bank and would explain the City's assumption that by executing this document and submitting it to the Department of Administration as the basis for the Department's approval of its application for emergency telephone service, the County had agreed to provide the service at no additional cost to the City. The document at least requires further foundation, explanation, and possibly parol evidence to explain its purpose and the parties' understanding when they executed it. However, I disagree with the majority when it concludes that the document itself does not satisfy the necessary elements of a contract.

The record does not make clear whether the County's plan summary is a preliminary plan or final plan, and whether it was approved by the Department of Administration. Presumably, if it is the final plan and was approved by the Department of Administration, the County is bound by the terms of the plan, including its offer to make up the difference between State funding and the cost of the emergency telephone services from other County departments.

Finally, the only source of funding for emergency telephone services provided for in the Emergency Telephone System Act is found at § 10-4-201, MCA, which provides that 25 cents a month is

10

to be assessed to each access line of each service subscriber in the State. The legislative history suggests that the Legislature was aware that these charges would be insufficient to fully fund emergency telephone services, but does not indicate where the shortfall was to be made up. The record in this case is devoid of any breakdown of the amount provided to the County and the City pursuant to § 10-4-201, MCA, as opposed to the actual cost of operating the service, and the percentage of that cost assessed to the City. I conclude that this information would also be helpful in resolving the issue raised on appeal by the City.

Other than the plan summary referred to previously (which is only questionably part of the record), the only evidence submitted to the District Court upon which it could base summary judgment was the affidavit of Gary Bjorklund, the Glacier County Sheriff. In his affidavit, he simply pointed out that the dispatch service at the Glacier County Sheriff's Office is the designated "public safety answering point" for Glacier County 9-1-1 service; he explained that in addition to the County's own emergency services (the County Sheriff's Office, rural fire departments, and County ambulance), the Sheriff's dispatch service served the City Police Department and City Animal Control Service during specified periods of time; and he stated that the County had demanded that the City contribute to the expense of the dispatch service, but that the City has refused to do so.

Other than this sparse information, there is no record on which to base summary judgment in this case. Based on this record,

11

I can neither agree nor disagree with the conclusion arrived at by the majority.

It is clear to me that the County, as the public safety answering point, has a statutory obligation to notify public safety agencies, such as the City of Cut Bank, of requests for service within the agency's jurisdiction, with or without reimbursement from the City. What is not clear to me is whether the County is refusing to provide notice by either direct dispatch, relay method, or transfer method, or whether the County is simply declining to provide direct dispatch without compensation.

It is also clear, from documents which have been provided to this Court, that some form of agreement was entered into between the County and the City as a basis for the Department of Administration's approval of the County's application for an emergency telephone system. That document, while signed by officials from both the County and the City, makes no reference to payment by the City for that service, but suggests that if the cost exceeds State funding, the County will make up the difference. However, this document requires further foundation and explanation.

My concern is that without an adequate record, this Court has decided issues of major significance to local governments around the State, and may have decided those issues incorrectly.

I conclude that the only appropriate resolution of this case from an appellate court's perspective is to vacate the summary judgment entered by the District Court and remand this case to the District Court for further development of the record. In

12

particular, I would instruct the parties to specify the forms of notification the County is obligated to provide to the City without compensation, pursuant to § 10-4-104(2), MCA, and if there is a difference, which form of notification or dispatch service the County claims it is entitled to charge a fee to perform. I would also direct the parties to provide foundational testimony by the parties who signed the agreement identified as a preliminary plan, which is attached as Exhibit "A" to the City of Cut Bank's brief on appeal, with some explanation of the purpose for which the document was prepared, what was ultimately done with the document, and what the parties believe it means with regard to payment for emergency telephone services in Glacier County. As the record presently exists, the County has simply ignored the document.

For these reasons, I am unable to concur in the majority opinion. While Glacier County may ultimately be entitled to judgment as a matter of law in this case, I do not believe there is an adequate record on which to arrive at that conclusion at this time.

Therefore, I dissent from the majority opinion.

_____
Justice

13